413 S.E.2d 120

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Earnie Troy GIBSON, Defendant Below, Appellant.**

**No. 20168.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 1991.

Decided Dec. 17, 1991.

---

**468**

Albert C. Dunn, Asst. Atty. Gen., Charleston, for State.

Sidney H. Bell, Welch, for Earnie Troy Gibson.

PER CURIAM:

This is an appeal by Earnie Troy Gibson from a final judgment of the Circuit Court of McDowell County finding him guilty, pursuant to a jury verdict, of first degree murder. Mr. Gibson was sentenced to life with a recommendation of mercy. Mr. Gibson now appeals and contends that the circuit court committed several errors which justify the reversal of his conviction. We disagree with the contentions of the appellant and affirm the judgment of the Circuit Court of McDowell County.

I.

On June 1, 1990, Mr. Gibson and two companions, Floyd Edward Blakely and Kennis Blakely, were driving from Welch, West Virginia, to Jolo, West Virginia, and stopped at a vacant lot beside Carson's Tavern, a drinking establishment in English, West Virginia. The victim, Mr. Terry Hagerman, and several other men were drinking at the tavern. The evidence indicated that Mr. Gibson and Mr. Hagerman had no prior relationship. Upon their arrival and while still in their car, Mr. Gibson and his companions were approached by Walter Blakely. Mr. Blakely later testified that he saw Mr. Gibson place a knife into his pants and cover it with his shirt before he exited the vehicle. According to the testimony of witnesses, Cleve Junior Lester requested Mr. Gibson and his friends to examine a diesel engine in Mr. Lester's Chevrolet Chevette. Jeffrey "Pee Wee" Lester and Mr. Gibson engaged in a disagreement of some nature, and Cleve Lester interceded and directed Pee Wee away from the scene. Although the testimony was contested by the appellant, witnesses did testify that they saw Mr. Gibson pull a knife and point it at Pee Wee during the discussion. Mr. Hagerman then ventured into the disagreement. He and Mr. Gibson struggled over the knife, and Mr. Hagerman was stabbed twice in the abdomen. Mr. Hagerman was fatally wounded.

Mr. Gibson testified that he drove directly from English to Bradshaw Town Hall, a few miles from the scene, to report the altercation and the injury. The murder weapon was a knife characterized as a "fighting knife" by the investigating officer, Deputy Sheriff Ron L. Blevins. The weapon was a large knife with finger holes to allow a better grip and greater force in striking. Walter Lester testified that he had been with the appellant when the appellant purchased the weapon from William Atwell.

Although no knife was found at the scene, a sheath was discovered. When a knife fitting the description of the murder weapon was later found in a creek under a

bridge on the road between Carson's Tavern and Bradshaw Town Hall, that knife fit into the sheath found at the scene. Furthermore, Dr. Irvin Sopher, the physician who performed the autopsy on the victim, testified that the knife admitted into evidence as the murder weapon was consistent with the dimensions of the weapon that fatally wounded Mr. Hagerman.

Mr. Gibson was found guilty of first degree murder on October 10, 1990, subsequent to a trial by jury, and the jury made a recommendation of mercy. On October 24, 1990, the trial court sentenced Mr. Gibson to the state penitentiary for the remainder of his natural life, with the right to be considered for parole after ten years. Mr. Gibson now appeals that decision of the lower court.

## II.

■ The appellant first contends that the lower court committed reversible error by failing to "say anything at all" to the appellant before he took the witness stand in his own defense. The appellant maintains that our holdings in *State v. Neuman*, 179 W.Va. 580, 371 S.E.2d 77 (1988) and *State v. Robinson*, 180 W.Va. 400, 376 S.E.2d 606 (1988) support his contention. In syllabus point 3 of *Robinson*, we stated the following:

"A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that a defendant's waiver is voluntary, knowing, and intelligent by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right." Syllabus point 7, *State v. Neuman*, 179 W.Va. 580, 371 S.E.2d 77 (1988).

180 W.Va. at 401, 376 S.E.2d at 607.

In response, the state contends that any failure by the lower court to question the appellant before he took the stand was harmless error due to the fact that the appellant, once he did take the stand, made no admission which could be construed as unfavorable to his self-defense theory of the case. Indeed, the appellant's testimony was consistent with that theory in every regard.

A court should ascertain whether the defendant's waiver of rights was knowingly, voluntarily, and intelligently made in order to prevent a defendant from testifying and damaging his case where he does not recognize his alternatives or rights with regard to such testimony. "The decision to testify," as we have explained, "is often crucial in determining a defendant's fate...." *Neuman*, 179 W.Va. at 584, 371 S.E.2d at 81. When the witness does not harm himself by such testimony, however, the witness has suffered no detriment, and any failure on the part of a trial judge to ascertain the defendant's understanding may be said to be harmless.

In *Robinson*, we reversed the lower court on the basis that it failed to question the defendant regarding his decision to take the stand. 180 W.Va. at 405, 376 S.E.2d at 611. In that case, however, the defendant's testimony revealed that he had planted, cultivated, and harvested the marijuana which formed the basis for his charge of two counts of manufacturing a controlled substance. *Id.*

■ In the present case, however, the appellant testified in support of his theory of self-defense. By no construction could his testimony be considered to have harmed his case. We have stated that the test for harmless constitutional error "is whether the apparent error did not, beyond a reasonable doubt, prejudice the accused at trial." *State ex rel. Grob v. Blair*, 158 W.Va. 647, 659, 214 S.E.2d 330, 337 (1975). "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." *Id.* 158 W.Va. at 648, 214 S.E.2d at 331, Syl.Pt. 5. We believe that the harmless error doctrine is applica-

ble to the present case in that the appellant was not incriminated by his own testimony, and his case was not undermined in any manner. Therefore, the failure of the trial judge to have previously ascertained the defendant's precise understanding may be categorized as harmless error.

■ The appellant also contends, as a portion of his first assignment of error, that the lower court erred by failing to put on the record the state's offer of a plea of second degree murder prior to and during the trial to ensure that the defendant was aware of and fully understood the nature of the proposed plea agreement. The appellant has directed us to no authority supportive of this contention; nor have we located any such authority. We have not required plea negotiations to be made a part of a formal record of trial. Once a plea agreement is reached, Rule 11 of the West Virginia Rules of Criminal Procedure requires a court to determine that acceptance is voluntary, knowing, and willing. However, there is no requirement that a defendant's prior refusal of an offer be placed on the record.

### III.

■ The appellant also contends that the lower court erred by permitting a state witness to testify that he had heard the defendant say, "I hope he dies," as the defendant and his two companions left the scene. The appellant argues that the statement constituted hearsay and did not meet any of the trustworthiness requirements for admissibility under the "Present Sense Impression" or "Excited Utterance" exceptions. W.Va.R.Evid. 803(1) and (2).

The statement in issue was allegedly heard by Mr. Russell Holt as he drove into the parking lot where the incident had occurred. Mr. Holt testified that he heard this statement immediately after the victim was stabbed and as Mr. Gibson and his companions were leaving the parking lot.

■ Prior to the admission of this statement, the trial court held an *in camera* hearing to determine the trustworthiness of Mr. Holt's testimony and the reliability of his statements. Based upon Mr. Holt's acquaintance with the appellant prior to the incident and upon the fact that the statement was made in his presence, the trial court determined that Mr. Holt's testimony was reliable and trustworthy. Furthermore, the statement heard by Mr. Holt satisfies the requirements for admission as an excited utterance or spontaneous declaration. W.Va.R.Evid. 803(2); *see also* Syl. Pt. 1, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987). In syllabus point 2 of *State v. Young*, 166 W.Va. 309, 273 S.E.2d 592 (1980), we set forth the six-factor test for determining the admissibility of a statement as an excited utterance or a spontaneous declaration, as follows:

An alleged spontaneous declaration must be evaluated in light of the following factors: (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact and not a mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation; and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

*Accord* Syl.Pt. 1, *State v. Farmer*, 185 W.Va. 238, 406 S.E.2d 458 (1991); Syl.Pt. 1, *State v. Ray*, 171 W.Va. 383, 298 S.E.2d 921 (1982).

■ We believe that the statement heard and testified to by Mr. Holt is encompassed within the definition of the excited utterance exception as previously announced by

this Court. We further believe that it was properly admitted into evidence. The statement was a natural declaration relating to and arising from the act of stabbing the victim, moreover; it was a factual statement of the appellant's apparent desire indicative of malice. We conclude that the statement heard by Mr. Holt was properly admitted.[1]

## IV.

The appellant also contends that the lower court erred in instructing the jury that it could return a verdict of murder in the first degree despite the absence of any evidence of the elements of premeditation and deliberation and in failing to instruct the jury on all the elements of murder in the first degree.

We find that the jury was properly instructed on the essential elements of the crime of first degree murder. Indeed, as the appellant emphasizes, we have held that "[t]he trial court must instruct the jury on all essential elements of the offenses charged, and the failure of the trial court to instruct the jury on the essential elements deprives the accused of his funda-

mental right to a fair trial, and constitutes reversible error." Syllabus, *State v. Miller*, 184 W.Va. 367, 400 S.E.2d 611 (1990).

However, in the present case, the lower court instructed the jury as follows:

The court instructs the jury that one of five verdicts may be found under the indictment in this case, namely: (1) Guilty of Murder in the First Degree; (2) Guilty of Murder in the Second Degree; (3) Guilty of Voluntary Manslaughter; (4) Guilty of Involuntary Manslaughter; (5) Not Guilty.

The court further instructs the jury that murder in first degree is when one person kills another unlawfully, maliciously, deliberately, and premeditatedly, . . . .

That instruction adequately informs the jury of all the elements of first degree murder.

## V.

The appellant also contends that the lower court committed instructional error by failing to give appellant's offered instructions number three and number five.[2] The appellant maintains that such

---

1. Although the appellee does not raise this issue as a justification for the introduction of the statement, the argument could be made that the statement does not actually constitute hearsay. Rule 801(d) of the West Virginia Rules of Evidence provides certain exemptions from the hearsay rule. Rule 801(d)(2)(A), "Admission by Party–Opponent," provides that a statement offered against a party is exempted from the hearsay rule if it is his own statement in either his individual or a representative capacity. In *Heydinger v. Adkins*, 178 W.Va. 463, 468, 360 S.E.2d 240, 245 (1987), we stated the following:

 The theory underlying this evidentiary rule is that if a person's own statements are offered against him, he cannot be heard to complain that he was denied an opportunity for cross-examination. An additional justification supporting the admissibility of this class of evidence is the fact that it is inherently trustworthy. . . . Presumably, a party would not admit or state anything against his or her interest unless it was true; nevertheless, if the statement is inaccurate, the party may deny it altogether or explain why he/she made it. (citation omitted).

 We believe this justification could have been employed as an additional ground for the introduction of the statement, "I hope he dies."

2. Appellant's offered instruction number three provided as follows:

 The court instructs the jury that if you believe from the evidence that an altercation over a knife which resulted in the death of Terry Hagerman was, without provocation, started by the deceased, and that the defendant, Earnie Troy Gibson, in fear for his safety endeavored to protect himself against the said Terry Hagerman, and, in so doing, the deceased was accidentally stabbed to death, then you must find the defendant not guilty.

 The appellant's offered instruction number five provided as follows:

 The court instructs the jury that as to the immediacy of the danger which threatened the defendant, and the necessity of killing in the first instant, the defendant is the judge, and that the jury must pass upon the defendant's action in the premises, viewing said action from the defendant's standpoint at the time of the killing; and if the jury believed from all the facts and circumstances in the case, viewed from the standpoint of a defendant at the time of the killing, that the defendant had reasonable ground to believe, and did belief [sic], the danger imminent, and that the killing was necessary to preserve his own life, or to protect himself from great bodily

**472**

instructions were crucial to his theory of the case. Upon review of the record, we believe that the court's failure to give such instructions was not in error since those instructions would have been cumulative and unnecessary in light of the other instructions actually given on the theory of self-defense.

State's instruction number D, actually given to the jury, instructed them on the amount of force which may be employed by a threatened individual to enable the person attacked to claim self-defense. In addition to that instruction, defendant's instructions number two, number four, and number six were given regarding the reasonableness of belief for a theory of self-defense, the duty to retreat, and the fact that the jury was to try the appellant on the facts as they appeared to the appellant at the time of the stabbing.[3]

 In syllabus point 9 of *State v. Deskins*, 181 W.Va. 112, 380 S.E.2d 676 (1989), we explained the following:

" 'It is not error to refuse to give an instruction to the jury, though it states a correct and applicable principle of law, if the principle stated in the instruction re-

fused is adequately covered by another instruction or other instructions given.' Syl. pt. 2, *Jennings v. Smith*, 165 W.Va. 791, 272 S.E.2d 229 (1980), *quoting,* syl. pt. 3, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966). Syl. pt. 2, *McAllister v. Weirton Hospital Co.*, [173] W.Va. [75], 312 S.E.2d 738 (1983)." Syllabus Point 4, *Jenrett v. Smith*, [173] W.Va. [325], 315 S.E.2d 583 (1983).

In determining whether a trial court erred in refusing a requested instruction, we have consistently held that we will review the jury instructions as a whole. *Roberts v. Stevens Clinic Hosp., Inc.*, 176 W.Va. 492, 345 S.E.2d 791 (1986). We conclude that the instructions actually given properly advised the jury of all the elements of the theory of self-defense.

## VI.

 The appellant also contends that the lower court erred by preventing defense counsel from inquiring into a state witness' bias or prejudice arising from their previous contacts and cooperation with the investigating officer. This assertion is based upon the trial court's refusal

---

harm, any use you believe he may have made of a deadly weapon in his defense is excusable and the jury should find him not guilty.

**3.** Defendant's jury instruction number two stated as follows:

The court instructs the jury that where a man is threatened with danger. [sic] The law authorizes him to determine from appearances and the actual state of things surrounding him, as to the necessity of resorting to force, and if he acts from reasonable and honest conviction, he will not be held criminally responsible for a mistake as to the actual danger. Where other and more judicious men would have been mistaken: for when one man attempts to injury another, It gives the injured the right to make use of such means to prevent injury as his behavior and, the situation necessitates.

Defendant's instruction number four was also given to the jury, as follows:

The Court instructs the jury that if you believe from the evidence in this case that the defendant, Earnie Troy Gibson was assaulted by the deceased, Terry Hagerman, with such violence as to make it appear at the time that the deceased intended to take his life or do him great bodily harm, and that the danger

was imminent and impending, then in that case the defendant was not bound to retreat but had the right to stand his ground, repel force with force, and if need be to kill his adversary to save his own life or to prevent his receiving great bodily injury, and it is not necessary that it shall appear to the jury to have been necessary.

Defendant's instruction number six was also given to the jury, as follows:

The Court instructs the jury that it is not essential to the right of self defense that the danger should in fact exist. If to the defendant it reasonably appeared that the danger in fact existed he had the right to defend against it to the same extent and under the same rules which would apply in case the danger had been real.

In passing upon the danger, if any, to which the accused was exposed, you will consider the circumstances as they reasonably appeared to him and draw such conclusions from these circumstances as he could reasonably have drawn, situated as he was at the time. In other words, the Court instructs you that the accused is entitled to be tried and judged by facts and circumstances as they reasonably appeared to him and not by any intention that may or may not have existed in the mind of the deceased.

to allow defense counsel to question Deputy Sheriff Ron L. Blevins about his relationship with the Lester family and his use of Cleve Lester as a confidential drug informant. The appellant also maintains that he should have been allowed to testify concerning alleged threats previously made against him by the Lester family.[4] The appellant objects to the trial court's prohibition against such questioning based upon his sixth amendment right to confrontation of witnesses who testify against him.[5]

 We stated in syllabus point 8 of *State v. James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (1990), that " '[a] witness may be cross-examined regarding bias, prejudice or expected favor or any other fact which might affect his credibility.' Syllabus Point 5, *State v. Jones*, 161 W.Va. 55, 239 S.E.2d 763 (1977), *overruled on other grounds, State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980)." However, we also recognized that a trial court has discretion in admitting bias testimony under Rule 401 of the West Virginia Rules of Evidence as to relevancy and Rule 403 as to prejudice. *James Edward S.*, 184 W.Va. at 416, 400 S.E.2d at 851.

In the present case, we see no error in the trial court's refusal to permit cross-examination on the issues sought to be introduced as bias. The appellant has been charged with the murder of Mr. Hagerman, not any member of the Lester family. Furthermore, the relevance of any prior disputes with the Lester family arising from the appellant's relationship with an ex-girl-friend of Pee Wee Lester's brother is highly questionable.

Likewise, any previous relationship between Deputy Sheriff Blevins and Cleve Lester wherein Mr. Lester served as a drug informant is irrelevant to the issue of the appellant's guilt or innocence of the murder of Mr. Hagerman. The lower court conducted an *in camera* hearing to examine the line of questioning sought to be used in cross-examination of Deputy Sheriff Blevins. The lower court properly thereafter limited the scope of cross-examination to areas of relevant evidence. We see no reversible error in this regard.

## VII.

 The appellant also maintains that the facts of this case do not support a first degree murder conviction. However, we believe that there was sufficient evidence in the present case from which a jury could reasonably have convicted the appellant of first degree murder. The standard for ascertaining the sufficiency of the evidence in a criminal case has previously been enunciated by this Court in syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), as follows:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

With specific reference to an issue of self-defense, we have stated that " '[i]t is peculiarly within the province of the jury to weigh the evidence upon the question of self-defense, and the verdict of a jury ad-

4. Apparently, Mr. Gibson had dated a woman who had been living with Mr. Gene Autry Lester at the time of Mr. Lester's death. Gene Lester was "Pee Wee" Lester's brother and Cleve Lester's cousin.

5. The confrontation clause contained in the sixth amendment to the United States Constitution provides as follows: "In all criminal prosecutions, the accused shall ... be confronted with the witnesses against him." The confronta-tion clause was made applicable to the states through the fourteenth amendment and has been used on various occasions by this Court in addressing a defendant's right to confront and cross-examine witnesses against him. *See* i.e. *James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843; *State v. Mullens*, 179 W.Va. 567, 371 S.E.2d 64 (1988); *State v. Eye*, 177 W.Va. 671, 355 S.E.2d 921 (1987); *State v. Hall*, 174 W.Va. 787, 329 S.E.2d 860 (1985).

verse to that defense will not be set aside unless it is manifestly against the weight of the evidence.'" *State v. Schaefer*, 170 W.Va. 649, 653, 295 S.E.2d 814, 819 (1982) (quoting Syl.Pt. 5, *State v. McMillion*, 104 W.Va. 1, 138 S.E. 732 (1927)).

The state presented evidence which could be briefly summarized as follows: The appellant and two companions parked near Carson's Tavern, the appellant was seen placing a large sheathed knife into his pants, the appellant and "Pee Wee" Lester engaged in a brief argument, the appellant pulled the knife out of its sheath and threatened "Pee Wee" (according to the testimony of Walter Blakely and Cleve Lester), the appellant pointed the knife toward Mr. Hagerman when Mr. Hagerman engaged in the discussion, and the ensuing fight ended in the fatal stabbing of Mr. Hagerman.

The defendant's theory of the case would postulate that the knife was not introduced into the scene by the appellant and that the appellant stabbed Mr. Hagerman in self-defense. The jury was then properly instructed regarding the elements of the crime charged, had the opportunity to weigh the testimony and assess the witness credibility, and rendered a conclusion. We do not find error in that scenario, and we do not believe that the facts as presented are unsupportive of the jury verdict.[6]

Based upon the foregoing and our thorough review of this record in this matter, we conclude that no reversible error was committed by the trial court. We therefore affirm the decision of the Circuit Court of McDowell County.

Affirmed.

---

[6] The appellant also contends that the lower court erred by permitting the prosecutor to question a state witness regarding a conversation between him and an individual who allegedly sold the defendant the knife with which the victim was stabbed. The individual who actually made the sale was unable to testify. We find this contention to be without merit. Walter Lester, who testified concerning the events surrounding the sale of the knife to the appellant, was actually present at the sale and personally witnessed the exchange. His testimony was reflective only of his personal knowledge, and its admission was not in error.