443 S.E.2d 244

**STATE of West Virginia, Plaintiff Below, Appellee,**

**v.**

**Ronnie Wayne JENKINS, Defendant Below, Appellant.**

**No. 21775.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 1994.

Decided March 25, 1994.

Jacquelyn I. Custer, Asst. Atty. Gen., Charleston, for appellee.

W. Dale Greene, Charleston, for appellant.

MILLER, Justice:

Ronnie Wayne Jenkins appeals a final order of the Circuit Court of Lincoln County, dated December 29, 1992, denying his motion to set aside a jury verdict finding him guilty of first degree murder without a recommendation of mercy. On appeal, the defendant asserts that the trial court erred: (1) in refusing to allow the defendant to impeach a prosecution witness with the witness's prior misdemeanor conviction of receiving stolen property; (2) in instructing the jury as to the legal consequences of the defendant's use of a deadly weapon; and (3) in refusing to instruct the jury on the consequences of recommending mercy in a first degree murder case. We find that the trial court committed reversible error with regard to its instruction to the jury on the effect of the use of a

deadly weapon. The trial court also erred in refusing the defendant's request to advise the jury as to the consequences of a recommendation of mercy.

## I.

During the afternoon of November 24, 1989, Billy Joe Adkins, the victim, and three of his friends were drinking beer in the victim's car, which was parked at a rock quarry on Upper Mud Fork road in Lincoln County. At approximately 3:00 p.m. that same afternoon, Karen Adkins, Keith Adkins, and Gilbert Courts were driving down Upper Mud River Road towards Hamlin, when they saw the defendant standing in the middle of the road holding a high-powered rifle and a bottle of whiskey. They knew the defendant so Mr. Courts stopped and asked if he wanted a ride. The defendant did, and he got into the truck. As they proceeded down the road, Karen Adkins asked the defendant where he was going, to which the defendant replied, "he was going to kill him a boy that thought he was a man." When they reached the rock quarry, the defendant told Mr. Courts that he had reached his destination and he exited the vehicle.

The defendant started walking towards the victim's car and began yelling at Billy Joe that "he was going to meet him in hell" and "he'd better pray." As the defendant moved closer to the car, the three other occupants fled. According to the testimony of Bobby Hill, one of the passengers in the victim's car, the defendant began poking the gun at the victim through the driver's side window. When Billy Joe grabbed the end of the rifle, the defendant pulled it away and shot at the car's windshield. The defendant then stepped back, pointed the gun through the driver's side window, and shot the victim in the head. The victim died shortly thereafter.

Following a six-day jury trial, the defendant was convicted of first degree murder without a recommendation of mercy. The defendant filed motions to set aside the jury verdict and for a new trial. In a final order dated December 29, 1992, the trial court denied these motions.

## II.

The defendant initially asserts that the trial court erred in refusing to allow him to impeach a prosecution witness, Bobby Hill, with his prior misdemeanor conviction of receiving stolen property. The record reflects that on October 31, 1990, Mr. Hill pled guilty to the misdemeanor crime of receiving stolen property in violation of W Va.Code, 61–3–18 (1923).[1] At trial, when the defense attempted to elicit this information from the defendant, the prosecution objected, and the trial court refused to allow the prior conviction evidence to be introduced.

▆▆▆ Rule 609(a)(2) of the West Virginia Rules of Evidence outlines when it is proper to impeach a witness other than a criminal defendant with evidence of a prior conviction.[2] As we explained in Syllabus Point 2 of *CGM Contractors, Inc. v. Contractors Environmental Services, Inc.* 181 W.Va. 679, 383 S.E.2d 861 (1989):

> "Rule 609(a)(2) of the West Virginia Rules of Evidence divides the criminal convictions which can be used to impeach a witness other than a criminal defendant into two categories: (A) crimes 'punishable by imprisonment in excess of one year,' and (B) crimes 'involving dishonesty or false statements regardless of the punishment.'"

In order to impeach a witness under Rule 609(a)(2)(A), the individual must have been convicted of a crime punishable by imprisonment in excess of one year. Bobby Hill was

---

1. Pursuant to W.Va.Code, 61–3–18, the crime of receiving stolen property is larceny. Under W.Va.Code, 61–3–13(b), where the value of the goods is less than $200 the crime is petit larceny, which is a misdemeanor.

2. Rule 609(a)(1) of the Rules of Evidence outlines when it is proper to impeach a criminal defendant with his prior conviction. This provision provides:

"Criminal Defendants.—For the purpose of attacking the credibility of a witness accused in a criminal case, evidence that he has been convicted of a crime shall be admitted if elicited from him during cross-examination or established by public record, but only if the crime involved perjury or false swearing."

convicted of receiving stolen property valued at less than $200. This crime is petit larceny and is a misdemeanor punishable by imprisonment in "the county jail for a term not to exceed one year or fined not to exceed five hundred dollars, or both, in the discretion of the court." W.Va.Code, 61–3–13(b) (1977). Thus, by definition, Mr. Hill's prior misdemeanor conviction would not be admissible under Rule 609(a)(2)(A).[3]

The second category of convictions that can be used to impeach a witness other than a criminal defendant includes those crimes involving "dishonesty or false statement, regardless of the punishment." W.Va.R.Evid. 609(a)(2)(B). In note 1 of *CGM Contractors, Inc. v. Contractors Environmental Services, Inc.,* 181 W.Va. at 682, 383 S.E.2d at 864, we recognized that crimes falling under Rule 609(a)(2)(B) were often called *crimen falsi:*

> "*Crimen falsi* generally refers 'to crimes in the nature of perjury or subornation of perjury, false statement, criminal fraud, embezzlement, false pretense, or any other offense which involves some element of deceitfulness, untruthfulness, or falsification bearing on a witness' propensity to testify truthfully.' *Black's Law Dictionary* 335 (5th ed. 1979)."

Although there has been some disagreement, "federal courts and most state courts are unwilling to conclude that offenses such as petty larceny, shoplifting, robbery, possession of a weapon, and narcotics violations are per se crimes of 'dishonesty and false statement.' " John W. Strong, et al., *McCormick on Evidence* § 42 at 146 (4th ed. 1992). (Footnotes omitted). *See, e.g., United States v. Fearwell,* 595 F.2d 771 (D.C.Cir.1978); *United States v. Brackeen,* 969 F.2d 827 (9th Cir.1992); *United States v. Sellers,* 906 F.2d 597 (11th Cir.1990); *State v. Terrell,* 156 Ariz. 499, 753 P.2d 189 (1988); *State v. Eugene,* 340 N.W.2d 18 (N.D.1983). In the present case, the defendant failed to show that Mr. Hill's prior conviction of larceny was based on facts showing deceitfulness or falsification. We, therefore, believe that the trial court correctly refused to allow the defendant to impeach Mr. Hill with his prior conviction.

## III.

### A.

Of more serious concern is the defendant's objection to State's Instruction No. 3.[4] Defense counsel objected to the State's instruction saying that "it's a misstatement of the law as to the intent and malice and deliberation and premeditation, the inference as it is stated, and again, I take the position, and do throughout, that there is a difference in these kind of," at which point he was cutoff by the judge who ruled the instruction would be given.[5]

---

3. Although an individual has been convicted of a crime punishable in excess of one year, evidence of the conviction cannot automatically be used to impeach the witness—two other issues must be considered. If the conviction is more than ten years old, the trial court must do a balancing test to determine if "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." W.Va.R.Evid. 609(b). Likewise, even for convictions that are less than ten years old, the court still must determine "that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect to the parties and embarrassment to the witness[.]" W.Va.R.Evid. 609(a)(2)(A).

4. State's Instruction No. 3 states:
"The Court instructs the jury that to convict one of murder, it is not necessary that malice should exist in the heart of the defendant, Ronnie Wayne Jenkins, against the deceased. If the jury believes from the evidence that the defendant, Ronnie Wayne Jenkins, was guilty of shooting with a deadly weapon, such as a .30–.30 rifle, the deceased and of killing him, the intent, the malice and the wilfulness, deliberation and premeditation may be inferred from the act, and such malice may not be directed against any particular person, but such acts by Ronnie Wayne Jenkins have shown a heart regardless of social duty and fatally bent on mischief.
"Therefore, if after fully and carefully considering all the evidence in this case, the jury believes beyond a reasonable doubt that Ronnie Wayne Jenkins committed the crime of 'murder in the first degree' by shooting with a deadly weapon the deceased, then Ronnie Wayne Jenkins may be found guilty of murder in the first degree of Billy Joe Adkins, as set forth in the *indictment.*" (Citation omitted; emphasis in original).

5. Earlier the defense attorney had objected to malice language in the court's charge stating that if the jury believed "this was an accidental kill-

In this case, the defendant's chief defense was that the killing was an accident as he intended only to shoot at the deceased to scare him. He produced a witness at trial who stated that the defendant had come to his residence after the shooting. He was extremely upset and kept repeating that he had not intended to kill the deceased, but only to scare him. The defendant also testified at trial that he had been drinking whiskey and smoking marijuana before the shooting and these activities had affected his coordination and mental capacity. He was carrying a bottle of whiskey when he entered Mr. Courts' truck shortly before the shooting. The bottle of whiskey was found at the scene of the shooting.

We find the State's instruction to be erroneous on several grounds. First, the initial sentence is wrong in stating that "to convict one of murder, it is not necessary that malice should exist in the heart of the defendant ... against the deceased."

We discussed the concept of malice in *State v. Hatfield*, 169 W.Va. 191, 198, 286 S.E.2d 402, 407 (1982), and stated that it "is often used as a substitute for 'specific intent [to] kill' or 'an intentional killing.'" *Citing State v. Starkey*, 161 W.Va. 517, 523, 244 S.E.2d 219, 223 (1978), and other cases.[6] We then concluded in *Hatfield:* "It is clear, however, that the intent to kill or malice is a required element of both first and second degree murder but the distinguishing feature for first degree murder is the existence of premeditation and deliberation." 169 W.Va. at 198, 286 S.E.2d at 407–08. (Footnote

omitted). In Syllabus Point 3 of *Hatfield*, we gave this general definition of the elements of first degree murder:

"Where there has been an unlawful homicide by shooting and the State produces evidence that the homicide was a result of malice or a specific intent to kill and was deliberate and premeditated, this is sufficient to support a conviction for first degree murder."

The rule that malice must be shown against the victim is consistent with our earlier cases,[7] as illustrated by Syllabus Point 5 of *State v. Panetta*, 85 W.Va. 212, 101 S.E. 360 (1919):

"Malice is an essential element of murder either in the first or second degree, and where an intentional homicide by the use of a deadly weapon is admitted, the jury may infer malice, willfulness and deliberation from the act; and *by legal malice is meant not only such as may exist against the deceased*, but it includes such disposition of the accused as shows a heart regardless of duty and fatally bent on mischief." (Emphasis added).

The rule that legal malice must exist against the deceased is implicit in our cases where we have held that if the deceased attacked the defendant, malice may not be implied from the defendant's use of a deadly weapon. This principle is set out in Syllabus Point 2 of *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978):

"Where a defendant is the victim of an unprovoked assault and in a sudden heat of passion uses a deadly weapon and kills the

ing, malice cannot be inferred from the fact of the killing."

6. In *State v. Starkey*, 161 W.Va. at 524, 244 S.E.2d at 223–24, we said:
"The term malice has been frequently used, but not extensively defined, by this Court. In *State v. Douglass*, 28 W.Va. 297, 299 (1886), this statement was made:
" '... [T]he source of which said malice is not only confined to a particular ill will to the deceased, but is intended to denote ... an action flowing from a wicked and corrupt motive, a thing done *malo animo*, where the fact has been attended with such circumstances as carry in them the plain indication of a heart regardless of social duty and fatally bent on mischief.' "

Section 7.1 of 2 W. LaFave & A. Scott, *Substantive Criminal Law* at 182 (1986), commenting on the common law concept of malice states: "Literally, 'malice' in the murder setting required at least an intent to kill, plus perhaps an element of hatred, spite or ill-will[.]"

7. The one exception may be a transferred intent homicide, which we outlined in Syllabus Point 6 of *State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991): "The doctrine of transferred intent provides that where a person intends to kill or injure someone, but in the course of attempting to commit the crime accidentally injures or kills a third party, the defendant's criminal intent will be transferred to the third party."

aggressor, he cannot be found guilty of murder where there is no proof of malice except the use of a deadly weapon."

*See also* Syllabus Point 2, *State v. Bowyer,* 143 W.Va. 302, 101 S.E.2d 243 (1957); Syllabus Point 3, *State v. Morris,* 142 W.Va. 303, 95 S.E.2d 401 (1956).

■ Thus, we conclude that an instruction in a first degree murder case that informs the jury that malice need not be shown on the part of the defendant against the deceased is erroneous.

B.

The defendant also claims that the language in the instruction regarding the consequences of the use of a deadly weapon which stated "the intent, the malice and wilfulness, deliberation and premeditation may be inferred from the act" is erroneous. The State argues that this language is consistent with an instruction in *State v. Louk,* 171 W.Va. 639, 301 S.E.2d 596 (1983).[8] We do not disagree that there are substantial similarities in the two instructions. However, the discussion in *Louk* was brief and related only to the issue of whether the use of the term "inferred" in the instruction constituted an impermissible burden-shifting instruction. *Louk*'s entire discussion on this instruction was:

"It is unconstitutional to shift the burden of proof to a defendant on any element of a crime by instructing a jury to *presume* its existence from certain facts. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Presumptions differ from inferences. *State v. Greenlief,* 168 W.Va. 561[, 567], 285 S.E.2d 391, 395

(1981). Instructions about the 'inference' of malice, if supported by the evidence, are permissible." 171 W.Va. at 643, 301 S.E.2d at 600. (Emphasis in original; citations omitted).

No attempt was made to analyze its language as against our prior law nor to draw any syllabus point with regard to the instruction.

■ The language of the *Louk* instruction is contrary to our generally accepted rule in a murder case as to what inferences are permissible from the defendant's use of a deadly weapon, as illustrated in the Syllabus of *State v. Johnson,* 142 W.Va. 284, 95 S.E.2d 409 (1956):

" 'In a homicide trial, malice and intent may be inferred by the jury from the defendant's use of a deadly weapon, under circumstances which the jury does not believe afforded the defendant excuse, justification or provocation for his conduct. Whether premeditation and deliberation may likewise be inferred, depends upon the circumstances of the case.' Point 2, Syllabus, *State v. Bowles,* 117 W.Va. 217[, 185 S.E. 205 (1936) ]."

*See also* Syllabus Point 8, *State v. Sauls,* 97 W.Va. 184, 124 S.E. 670 (1924).

This Court in *State v. Coleman,* 96 W.Va. 544, 548–49, 123 S.E. 580, 582 (1924), specifically addressed a similar *Louk* instruction[9] and rejected this instruction because "in the instant case circumstances were shown tending to rebut a presumption of premeditation and deliberation, essential elements of first degree murder, from the bare fact of the stabbing of deceased with a deadly weapon."

---

8. The *Louk* instruction was:

" 'The Court instructs the jury that to convict one of murder, it is not necessary that malice should exist in the heart of the Defendant against the deceased. If the jury believe from the evidence that the Defendant was guilty of shooting with a deadly weapon, the deceased, and of killing him, the intent, the malice and the wilfullness, deliberation and premeditation may be inferred from the act, and such malice may not be directed against any particular person, but such as shown a heart regardless of social duty and fatally bent on mischief.' " 171 W.Va. at 643, 301 S.E.2d at 600.

9. The instruction in *Coleman,* 96 W.Va. at 548, 123 S.E. at 581–82, was:

" 'The court instructs the jury that to convict one of murder it is not necessary that malice should exist in the heart of the accused against the deceased. If the jury believe beyond a reasonable doubt from the evidence that the prisoner was guilty of stabbing, with a deadly weapon, the deceased, and of killing him, the intent, the malice, and the willfulness and premeditation may be inferred from the act and such malice may not be directed against any particular person, but such as shows a heart regardless of social duty fatally bent on mischief.' "

The Court in *Coleman* set out this principle in Syllabus Point 2:

"Where the evidence tends to show that the homicide was induced by the use of a vile and opprobrious epithet applied by deceased to accused at the time of the homicide, and evidence is also adduced raising the issue of defendant's mental irresponsibility, it is error to instruct the jury that if they believe beyond a reasonable doubt from the evidence that the prisoner was guilty of stabbing with a deadly weapon the deceased, and of killing him, the intent, the malice, and the willfulness and premeditation may be inferred from the act."

A similar rule was set out in Syllabus Point 3 of *State v. Whitt*, 96 W.Va. 268, 122 S.E. 742 (1924), where the defendant was engaged in a scuffle with the victim and his gun went off killing him:

"Where the facts and circumstances of a homicide case are such that they may in the minds of the jurors rebut a mere inference of malice on the part of the accused, an abstract instruction to the effect that it is not necessary that malice should exist in the heart of the accused toward deceased, or any particular person; and that deliberation, willfulness and malice may be inferred from the use of a deadly weapon; and which omits to mention any of the various circumstances tending to rebut such inference, is erroneous."

*See also State v. Best*, 91 W.Va. 559, 113 S.E. 919 (1922).

What is important to realize is that these cases are allowing an inference of malice and intent from the use of a deadly weapon so long as the instruction is qualified by language that informs the jury that this may be done if the evidence does not show that the defendant had an excuse, justification, or provocation. It is any of these elements that, if believed by the jury, will reduce the homicide to something less than murder.[10]

Our cases illustrate those acts which can reduce the severity of the crime below murder. For example, in *State v. Morris*, 142 W.Va. 303, 95 S.E.2d 401 (1956), the defendant, an elderly sick man, was twice assaulted by a younger man, and, during the second affray, the defendant stabbed the assailant killing him. We reversed his conviction for first degree murder, stating in Syllabus Points 3 and 4:

"3. When an affray is provoked by the deceased, the use of a deadly weapon by the defendant in killing the deceased will not give rise to a presumption of malice.

"4. 'A sudden intentional killing with a deadly weapon, by one who is not in any way at fault, in immediate resentment of a gross provocation, is *prima facie* a killing in heat of blood, and, therefore, an offense of no higher degree than voluntary manslaughter.' Point 10, syllabus, *State v. Clifford*, 59 W.Va. 1[, 52 S.E. 981 (1906) ]."

*See also State v. Ponce*, 124 W.Va. 126, 19 S.E.2d 221 (1942).

Moreover, we have recognized that an unprovoked violent attack on a defendant, where the defendant reasonably believes that great bodily harm or death will result, may justify killing the victim under the doctrine of self-defense. *State v. Bowyer, supra; State v. Foley*, 128 W.Va. 166, 35 S.E.2d 854 (1945). *Cf. State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978).[11] A similar type of defense arises when a defendant claims that he lacks criminal responsibility because of his

---

**10.** In note 7 of *State v. Starkey*, 161 W.Va. at 527, 244 S.E.2d at 225, we said:

"The term 'provocation' as it is used to reduce murder to voluntary manslaughter, consists of certain types of acts committed against the defendant which would cause a reasonable man to kill.... It is important to note that provocation is not a defense to the crime, but merely reduces the degree of culpability[.]" (Citations omitted).

**11.** Much the same self-defense justification applies to the defense of one's home. As we explained in Syllabus Point 2 of *State v. W.J.B.*, 166 W.Va. 602, 276 S.E.2d 550 (1981):

"The occupant of a dwelling is not limited in using deadly force against an unlawful intruder to the situation where the occupant is threatened with serious bodily injury or death, but he may use deadly force if the unlawful intruder threatens imminent physical violence or the commission of a felony and the occupant reasonably believes deadly force is necessary."

insanity. *See* Syllabus Point 5, *State v. Massey,* 178 W.Va. 427, 359 S.E.2d 865 (1987).[12]

In *State v. Bowles,* 117 W.Va. 217, 185 S.E. 205 (1936), the defense was accidental homicide. The defendant claimed that the victim was fighting with him and seized his gun hand, accidentally causing the gun to discharge and kill the victim. We indicated that an instruction that told "the jury that they might infer premeditation and deliberation from the . . . [use of a deadly weapon] was erroneous[.]" 117 W.Va. at 221, 185 S.E. at 208.

Finally, we recognized in Syllabus Point 2 of *State v. Bragg,* 140 W.Va. 585, 87 S.E.2d 689 (1955), that voluntary intoxication on the part of a defendant may be a sufficient excuse to reduce the crime from first degree murder to second degree murder because of a lack of premeditation and deliberation.[13]

■ The foregoing cases are not designed to cover all the circumstances in a homicide where excuse, justification, or provocation may be involved. They do illustrate that it is erroneous in a first degree murder case to instruct the jury that if the defendant killed the deceased with the use of a deadly weapon, then intent, malice, willfulness, deliberation, and premeditation may be inferred from that fact, where there is evidence that the defendant's actions were based on some legal excuse, justification, or provocation. To the extent that the instruction in *State v. Louk,* 171 W.Va. at 643, 301 S.E.2d at 600, is contrary to these principles, it is disapproved.

In this case, the trial court recognized that there was some evidence indicating an accidental shooting as the court's charge touched on this fact.[14] Moreover, the charge to the jury also recognized that the defendant's intoxication would reduce his degree of culpability.[15] The critical point is that these instructions were completely contrary to State's Instruction No. 3, which stated that malice was not necessary to be shown against the victim and that all of the elements may be inferred solely from the use of a deadly weapon. In Syllabus Point 9 of *State v. Bail,* 140 W.Va. 680, 88 S.E.2d 634 (1955), we held that a bad instruction is not cured by a good one, the reason being that there is no way to tell if the jury followed the good instruction rather than the bad one.[16] Moreover, as we point out in Section III(C), *infra,* there is a constitutional error in State's Instruction No. 3 which cannot be cured.

### C.

We have addressed State's Instruction No. 3 in several phases. In III(A), *supra,* we

---

**12.** Syllabus Point 5 of *Massey* states:
" 'When a defendant in a criminal case raises the issue of insanity, the test of his responsibility for his act is whether, at the time of the commission of the act, it was the result of a mental disease or defect causing the accused to lack the capacity either to appreciate the wrongfulness of his act or to conform his act to the requirements of the law. . . .' Syllabus Point 2, in part, *State v. Myers,* 159 W.Va. 353, 222 S.E.2d 300 (1976)."

**13.** Syllabus Point 2 of *State v. Bragg, supra,* states:
"Provided an accused did not intentionally become intoxicated so as to prepare himself for the commission of the crime, intoxication of an accused is a defense to a charge of murder of the first degree, when the degree of intoxication is such as to render the accused incapable of premeditation and deliberation."
*See also* Syllabus Point 8, *State v. Hickman,* 175 W.Va. 709, 338 S.E.2d 188 (1985); Syllabus Point 2, *State v. Keeton,* 166 W.Va. 77, 272 S.E.2d 817 (1980).

**14.** The relevant language was that if "at the time of the shooting of Billy Joe Adkins [the defendant] had no specific intent to kill the said Billy Joe Adkins, but rather wanted only to frighten him, not intending to kill him, then you may not find Ronnie Jenkins guilty of first degree murder[.]"

**15.** The relevant language is:
"[I]f you believe from the evidence herein that Ronnie Jenkins drunkenly and carelessly embarked on an unlawful course of conduct designed and intended by him to frighten or change Billy Joe Adkins, but not to kill him, and that during the course of that conduct, without malice on the part of the said defendant, Billy Joe Adkins was killed, then your verdict shall be of no higher grade than voluntary manslaughter."

**16.** Syllabus Point 9 of *State v. Bail, supra,* states:
"Though instructions given to a jury are to be considered as a whole, the giving of 'A bad instruction is not cured by a good one given to the jury, and with which it is in conflict.' Point 2, Syllabus, *State v. Garner,* 97 W.Va. 222[, 124 S.E. 681 (1924)]."

addressed the first sentence which stated that the defendant's malice need not be shown against the deceased. We pointed out why this statement was erroneous based on the fact that malice was a species of criminal intent and must be shown to exist against the deceased in a homicide case.

In the second discussion contained in III(B), *supra*, we analyzed that portion of State's Instruction No. 3 that dealt with the various inferences that arose from the use of a deadly weapon. We pointed out that its language was contrary to our prior law and, under the facts of this case, it was erroneous.

In this section, we deal with the last portion of State's Instruction No. 3, which states:

> "Therefore, if after fully and carefully considering all the evidence in this case, the jury believes beyond a reasonable doubt that Ronnie Wayne Jenkins committed the crime of 'murder in the first degree' by shooting with a deadly weapon the deceased, then Ronnie Wayne Jenkins may be found guilty of murder in the first degree of Billy Joe Adkins, as set forth in the *indictment*." (Emphasis in original; citation omitted).

This paragraph was immediately preceded by the paragraph that first stated that malice need not be found to exist against the deceased. This paragraph also stated that if the defendant used a deadly weapon to kill the deceased "the intent, the malice and the wilfulness, deliberation and premeditation may be inferred from the act[.]" [17]

The impact of the last portion of the State's instruction reduces the ultimate question of the defendant's guilt to this statement: "[I]f ... the jury believes beyond a reasonable doubt that ... [the defendant] committed the crime of 'murder in the first degree' by shooting with a deadly weapon the deceased, then ... [the defendant] may be found guilty of murder in the first degree[.]" Putting aside the fact that the sentence is a tautology, i.e., by committing the crime of murder by a deadly weapon, the defendant may be found guilty of murder, the jury's deliberation is focused on a single fact—the shooting with a deadly weapon. All other elements of first degree murder are subsumed in this one finding. The jury is not asked to infer or presume, but, in effect, is told if the deceased was shot with a deadly weapon, then first degree murder occurred.

The State's instruction in this case is more egregious than the instruction in *Yates v. Evatt*, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991),[18] which was held unconstitutional by the United States Supreme Court. The Supreme Court reaffirmed this basic tenet in *Yates*:

> "This Court held in *Sandstrom v. Montana, supra*, 442 U.S. [510], at 513, 524, 99 S.Ct. [2450] at 2453, 2459, 61 L.Ed.2d 39, [at 44, 51 (1979)], that a jury instruction stating that '"the law presumes that a person intends the ordinary consequences of his voluntary acts"' violated the requirement of the Due Process Clause that the prosecution prove each element of a crime beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25

---

**17.** The complete text of this instruction is set out in note 4, *supra*.

**18.** The instruction considered in *Yates*, 500 U.S. at 397, 111 S.Ct. at 1889–90, 114 L.Ed.2d at 444–45, states, in relevant part:

> " 'Malice may also be implied as where, although no expressed intention to kill was proved by direct evidence, it is indirectly and necessarily inferred from facts and circumstances which are, themselves, proved. Malice is implied or presumed by the law from the willful, deliberate, and intentional doing of an unlawful act without any just cause or excuse. In its general signification, malice means the

doing of a wrongful act, intentionally, without justification or excuse.

> " 'I tell you, however, that if the facts proven are sufficient to raise a presumption of malice, that presumption is rebuttable, that is, it is not conclusive on you, but it is rebuttable by the rest of the evidence. I tell you, also, that malice is implied or presumed from the use of a deadly weapon. I further tell you that when the circumstances surrounding the use of that deadly weapon have been put in evidence and testified to, the presumption is removed. And it ultimately remains the responsibility for you, ladies and gentlemen, under all the evidence to make a determination as to whether malice existed in the mind and heart of the killer at the time the fatal blow was struck.' "

L.Ed.2d 368 (1970)." 500 U.S. at 400, 111 S.Ct. at 1891, 114 L.Ed.2d at 446.

█ We followed *Sandstrom v. Montana, supra,* in *State v. O'Connell,* 163 W.Va. 366, 256 S.E.2d 429 (1979), where we concluded in its Syllabus: "In a criminal prosecution, it is constitutional error to give an instruction which supplies by presumption any material element of the crime charged." Earlier in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), a homicide instruction that stated that the defendant was required to prove justification or excuse in order to reduce the homicide to manslaughter was held to be unconstitutional as burden shifting. We followed *Mullaney* in Syllabus Point 4 of *State v. Pendry,* 159 W.Va. 738, 227 S.E.2d 210 (1976), *overruled on other grounds, Jones v. Warden, West Virginia Penitentiary,* 161 W.Va. 168, 241 S.E.2d 914, *cert. denied, Warden of West Virginia Penitentiary v. Jones,* 439 U.S. 830, 99 S.Ct. 107, 58 L.Ed.2d 125 (1978), where we stated:

> "In a criminal prosecution, the State is required to prove beyond a reasonable doubt every material element of the crime with which the defendant is charged, and it is error for the court to instruct the jury in such a manner as to require it to accept a presumption as proof beyond a reasonable doubt of any material element of the crime with which the defendant is charged or as requiring the defendant either to introduce evidence to rebut the presumption or to carry the burden of proving the contrary." [19]

█ In this case, the last portion of State's Instruction No. 3 did not use the terms "presumption" or "inference," but made a conclusive finding by stating that if the jury found the defendant used a deadly weapon to kill the deceased, it could find him guilty of first degree murder. It went beyond the earlier portion of the instruction which informed the jury that it could infer intent, malice, willfulness, deliberation, and premeditation, and which we held erroneous in Part III(B), *supra.* What this language does is advise the jury that the use of a deadly weapon amounts to first degree murder regardless of any attenuating circumstances. The State thereby is relieved of any necessity to prove any of the elements of first degree murder once it is shown that the deceased was killed with a deadly weapon. This result is patently unconstitutional under the foregoing law. Thus, an instruction which informs the jury that it may find the defendant guilty of first degree murder if it finds that he used a deadly weapon to kill the deceased unconstitutionally shifts the burden of proof.

The State did have some general language defining first degree murder in the abstract and also customary instructions as to its burden of proof. However, the United States Supreme Court made it plain in *Francis v. Franklin,* 471 U.S. 307, 319–20, 105 S.Ct. 1965, 1974, 85 L.Ed.2d 344, 357 (1985), that such instructions will not cure an unconstitutional presumption instruction: "These general instructions as to the prosecutor's burden and the defendant's presumption of innocence do not dissipate the error in the challenged portion of the instruction."

Moreover, the Supreme Court in *Francis* went on to consider whether specific language stating that "*criminal* intention may not be presumed" would cure an instruction with an unconstitutional presumption.[20] 471

---

**19.** The relevant portion of the *Pendry* instruction which was found to be unconstitutional as burden shifting, thus violating the *Mullaney* standard, was:

> " '[I]f ... [the jury] believe from the evidence that ... [the defendant] shot and killed the deceased ... by the deliberate use of an instrument likely to produce death, under the circumstances, then the presumption of the law, arising in absence of proof to the contrary, is that he intended the consequences that resulted from said use of said deadly instrument.' "
> 159 W.Va. at 749, 227 S.E.2d at 218.

**20.** The entire text of the questioned instruction in *Francis,* 471 U.S. at 311–12, 105 S.Ct. at 1969–70, 85 L.Ed.2d at 351–52, is:

> " 'A crime is a violation of a statute of this State in which there shall be a union of joint operation of act or omission to act, and intention or criminal negligence. A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention or criminal negligence. The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be re-

U.S. at 320, 105 S.Ct. at 1974, 85 L.Ed.2d at 357. (Emphasis in original). After a considerable discussion as to its possible impact on the jury, this conclusion was reached:

"Even if a reasonable juror could have understood the prohibition of presuming 'criminal intention' as applying to the element of intent, that instruction did no more than contradict the instruction in the immediately preceding sentence. A reasonable juror could easily have resolved the contradiction in the instruction by choosing to abide by the mandatory presumption and ignore the prohibition of presumption.... Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." 471 U.S. at 322, 105 S.Ct. at 1975, 85 L.Ed.2d at 358.

The issue in *Yates v. Evatt, supra,* was whether the South Carolina Supreme Court was correct in holding that the unconstitutional burden-shifting instruction could be cured by the doctrine of harmless constitutional error. The United States Supreme Court decided that it could not.

■ *Yates* began its analysis by recognizing the harmless constitutional error test developed in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967), that it may be deemed harmless if "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" 500 U.S. at 403, 111 S.Ct. at 1892, 114 L.Ed.2d at 448. We have adopted a similar harmless constitutional error test in Syllabus Point 5 of *State ex rel.*

*Grob v. Blair,* 158 W.Va. 647, 214 S.E.2d 330 (1975):

"Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt."

*See also* Syllabus Point 2, *State v. Gibson,* 186 W.Va. 465, 413 S.E.2d 120 (1991); Syllabus Point 7, *Marano v. Holland,* 179 W.Va. 156, 366 S.E.2d 117 (1988); Syllabus Point 3, *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173 (1983).

The Supreme Court in *Yates, supra,* then elaborated on what was meant by unconstitutional instructional error that did not contribute to the verdict:

"To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. Thus, to say that an instruction to apply an unconstitutional presumption did not contribute to the verdict is to make a judgment about the significance of the presumption to reasonable jurors, when measured against the other evidence considered by those jurors independently of the presumption." 500 U.S. at 403–04, 111 S.Ct. at 1893, 114 L.Ed.2d at 449.

When the foregoing test was applied in *Yates,* the instructions were found not to be harmless error because there was a lack of evidence to support the malice element beyond a reasonable doubt independent of the presumption.[21] The victim in *Yates* inter-

butted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.' "

21. In note 4 of *Estelle v. McGuire,* 502 U.S. 62, 69, 112 S.Ct. 475, 482, 116 L.Ed.2d 385, 399 (1991), the Supreme Court in speaking of evaluating jury instructions referred to a reasonable likelihood standard and indicated that the standard of review announced in *Yates, supra,* and *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328,

112 L.Ed.2d 339 (1990), was disapproved. This situation has caused 92 Shepard's United States Citations No. 8, Cases Part 1B (Shepard's/McGraw–Hill 1994), to list both *Yates* and *Cage* as being overruled. We believe this interpretation is erroneous as the statement was not intended to refer to the substantive law in these cases relating to the unconstitutional nature of the instruction considered in *Yates* nor *Cage* which dealt with an unconstitutional reasonable doubt instruction. Indeed, the same unconstitutional instruction considered in *Cage* was recently condemned as unconstitutional in *Sullivan v. Louisiana,* — U.S. —, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Moreover, we find it impossible to believe that the Supreme Court would overrule the substantive law of two recent opinions, that were virtually unanimous as occurred

vened when her store was being robbed. She seized one of the robbers, and, in the course of the struggle, was stabbed to death. Yates, who was an accomplice to the robbery, had already fled the store when this act occurred. The Supreme Court found that the perpetrator's actions in stabbing the deceased could not be said to demonstrate an intent to kill that could be imputed to Yates.

In the present case, the mandatory nature of the instruction, focused only on the shooting with a deadly weapon, absolved the State from any proof of first degree murder other than the shooting with a deadly weapon. Moreover, the malice component of murder was earlier removed with the court's admonition that it need not be shown to exist against the deceased. It cannot be said beyond a reasonable doubt that the unconstitutional instruction could not have contributed to the verdict of first degree murder without a recommendation of mercy. Consequently, we find the instruction to be reversible error.

## IV.

Because this case is reversed on the first degree murder instructional error, we do not deem it necessary to address the defendant's other errors except one. It is the claim that the trial court erred in refusing to give the defendant's instruction explaining the consequences of a recommendation of mercy. The instruction contained this language: "Eligibility for parole in no way guarantees immediate parole after ten (10) years. Parole is given to inmates only after a thorough consideration of their records by the Parole Board." The trial court accepted the State's instruction providing that a verdict of first degree murder "WITH RECOMMENDATION OF MERCY is punishable by confinement in the penitentiary of this state for life WITH eligibility for parole after ten (10) years." (Emphasis in original). We have reviewed the record and find that the trial court erred.

■ The State's instruction given in this case is virtually identical to the one we found erroneous in *State v. Headley,* 168 W.Va. 138, 282 S.E.2d 872 (1981). In *Headley,* we said that although the instruction given "was an accurate statement, ... [it] was misleading because it gave the jury members, who are not presumed to have knowledge of the law, the impression that the appellant could go free immediately at the whim of the parole board." 168 W.Va. at 142, 282 S.E.2d at 875. We reiterated the essential elements of a proper instruction in Syllabus Point 4 of *Headley:*

" 'In a case in which a jury may return a verdict of guilty of murder of the first degree, it is the mandatory duty of the trial court, without request, to instruct the jury that to such verdict it may add a recommendation of mercy, that such recommendation would mean that the defendant could be eligible for parole consideration only after having served a minimum of ten years and that otherwise the defendant would be confined to the penitentiary for life without possibility of parole.' Syl. pt. 3, *State v. Lindsey,* 160 W.Va. 284, 233 S.E.2d 734 (1977)."

In *State v. Headley, supra,* we also stated that the instruction should advise the jury that "mere eligibility for parole in no way guarantees immediate parole after ten years and that parole is given to inmates only after a thorough consideration of their records by the parole board. *See W.Va.Code,* 62–12–13 [1981]." 168 W.Va. at 143, 282 S.E.2d at 875.

The language in the instruction offered by the defendant in this case parallels the language we identified in *Headley* as being required. It was error for the trial court to refuse to give it. Indeed, as we said in *State v. Wayne,* 162 W.Va. 41, 47, 245 S.E.2d 838, 843 (1978), "the defendant is entitled to *any* instruction on the subject which correctly states the law and which he deems will present the proposition in its most favorable light." (Emphasis in original). *See, e.g.,*

in *Yates* and *Cage,* by a brief footnote. Certainly, the federal courts of appeals have not treated *Estelle*'s footnote as overruling *Yates. See, e.g., United States v. Gordon,* 987 F.2d 902, 909 (2d Cir.1993); *Orndorff v. Lockhart,* 998 F.2d 1426, 1430–31 (8th Cir.1993); *Stevens v. Zant,* 968

F.2d 1076, 1085–86 (11th Cir.1992). Some state courts have considered *Yates* and *Cage* to have been overruled. *E.g., People v. Clark,* 5 Cal.4th 950, 22 Cal.Rptr.2d 689, 734, 857 P.2d 1099, 1144 (1993) (as to *Yates* ); *State v. Stamps,* 865 S.W.2d 393, 399 (Mo.App.1993) (as to *Cage* ).

State v. Headley, supra; State v. Lindsey, *160 W.Va. 284, 233 S.E.2d 734 (1977).*[22]

## V.

For the reasons set out in Part III, *supra,* we conclude that State's Instruction No. 3 was erroneous, and, therefore, the judgment of the Circuit Court of Lincoln County is reversed and this case is remanded for a new trial.

Reversed and remanded.

**22.** Were this the only error, we might adopt the State's suggestion that the matter be remanded to the trial court with directions that it resentence the defendant to life with mercy, unless within thirty days the prosecutor elects to retry the defendant. In that event, the judgment would be reversed and the defendant would be granted a new trial. *See, e.g., Strader v. Garrison,* 611 F.2d 61 (4th Cir.1979); *United States v. Burnette,* 698 F.2d 1038 (9th Cir.1983); *Bowler v. United States,* 480 A.2d 678 (D.C.App.1984); *Moore v. United States,* 388 A.2d 889 (D.C.App. 1978); *People v. Van Wyck,* 76 Mich.App. 17, 255 N.W.2d 754 (1977), *reversed on other grounds,* 402 Mich. 266, 262 N.W.2d 638 (1978); *State v. Berger,* 72 Wyo. 422, 265 P.2d 1061 (1954).