536 S.E.2d 120

STATE of West Virginia ex rel. Bonny
L. HALL, Petitioner,

v.

James N. LILLER, Warden, Pruntytown
Correctional Center, Respondent.

No. 26832.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 11, 2000.

Decided May 4, 2000.

698

Franklin D. Cleckley, Esq., James B. Zimarowski, Esq., Morgantown, West Virginia, Attorneys for Petitioner.

Darrell V. McGraw, Jr., Attorney General, Silas B. Taylor, Esq., Senior Deputy Attorney General, Charleston, West Virginia, Attorneys for Respondent.

PER CURIAM:

This proceeding involves a petition for a writ of habeas corpus filed by Bonny L. Hall ("Ms.Hall"), an inmate of the Pruntytown Correctional Center, invoking the original jurisdiction of this Court. Ms. Hall alleges that during her trial on the charge of first degree murder, the Circuit Court of Harrison County failed to advise her of her right to testify. Ms. Hall further alleges that jury instructions given by the circuit court on the use of a deadly weapon deprived her of a fair trial. Based upon our review of the record, the parties' arguments, and all matters submitted before this Court, we deny the writ.

I.

On the night of October 19, 1991, Morton L. Hall, Ms. Hall's husband, was shot to death in the Halls' home in Bridgeport, West Virginia. Evidence produced at trial indicated that Mr. Hall was shot four times while he was sitting in a chair watching television.

Some time after the shooting, Ms. Hall called 911. When the ambulance arrived, she directed the emergency personnel to leave. Ms. Hall then contacted her part-time chauffeur, Michael Nicholson ("Nicholson"), and requested that he come to the residence. Upon his arrival, Ms. Hall showed Nicholson the body of Mr. Hall. At that time, Ms. Hall informed Nicholson that she had shot Mr. Hall. Nicholson attempted to persuade Ms. Hall to call the police and to get an ambulance. Ms. Hall refused these requests. Nicholson left the Halls' residence and immediately contacted the police. Ms. Hall was subsequently arrested and charged with her husband's murder.

The matter came to trial in July of 1993. During the course of the trial, counsel for Ms. Hall put forth an insanity defense, and called two expert witnesses to testify about her mental capacity at the time of the shooting. At the conclusion of the trial, Ms. Hall was convicted of first degree murder, with a recommendation of mercy.

Ms. Hall filed a direct appeal to this Court, arguing that the circuit court had failed to advise her of her right to testify as required by State v. Neuman, 179 W.Va. 580, 371

S.E.2d 77 (1988). Ms. Hall also argued that the circuit court erred in instructing the jury that it could infer the essential elements of the murder charge from Ms. Hall's use of a deadly weapon under circumstances that the jury did not believe afforded Ms. Hall excuse, justification or provocation for her conduct. This appeal was refused.

Following the denial of her petition for appeal, Ms. Hall filed a Petition for a Post–Conviction Writ of Habeas Corpus in the Circuit Court of Harrison County alleging numerous errors, including the two raised in the instant petition. A 3-day evidentiary hearing was conducted concerning all the issues raised by Ms. Hall. On October 17, 1996, the circuit court denied Ms. Hall's request for habeas relief.

Ms. Hall subsequently appealed the October 1996 denial of her habeas corpus petition to this Court. Her appeal was refused.

A federal petition for habeas corpus relief was filed in the United States District Court for the Northern District of West Virginia. The petition again raised numerous issues, including the two now before us. By order dated February 12, 1999, the petition was refused.

Ms. Hall then filed the present petition for a writ of habeas corpus with this Court.

## II.

■ Based upon the post-conviction habeas corpus statute, *W.Va.Code*, 53–4A–1 *et seq.*, we have stated that:

**1.** We do not consider our two past refusals of Ms. Hall's appeals to be decisions on the merits of the issues raised in the petition currently before us. We have stated:

> This Court's rejection of a petition for appeal is not a decision on the merits precluding all future consideration of the issues raised therein, unless as stated in Rule 7 of the West Virginia Rules of Appellate Procedure, such petition is rejected because the lower court's judgment or order is plainly right, in which case no other petition for appeal shall be permitted.

Syllabus, *Smith v. Hedrick*, 181 W.Va. 394, 382 S.E.2d 588 (1989).

**2.** *W.Va.Code*, 53–4A–1(b)(1967) provides:

> For purposes of this article, a contention or contentions and the grounds in fact and law

... every person convicted of a crime shall have a fair trial in the circuit court, an opportunity to apply for an appeal to this Court, and one omnibus post-conviction habeas corpus hearing at which he may raise any collateral issues which have not previously been fully and fairly litigated.

*Losh v. McKenzie*, 166 W.Va. 762, 764, 277 S.E.2d 606, 609 (1981). *W.Va.Code*, 53–4A–1(a) [1967] provides that any person convicted of a crime and incarcerated has the right to file a writ of habeas corpus "if and only if such contention or contentions and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated[.]" An issue is "previously and finally adjudicated" when, at some point, there has been "a decision on the merits thereof after a full and fair hearing thereon" with the right to appeal such decision having been exhausted or waived. *W.Va.Code*, 53–4A–1(b) (1967).[1]

Counsel for Ms. Hall concedes that the issues raised before us in the current petition have been raised and adjudicated before the circuit court within the meaning of the above statute. Ms. Hall argues, however, that *W.Va.Code*, 53–4A–1(b) permits further review if the previous habeas corpus decision was "clearly wrong."[2] Ms. Hall contends that the circuit court's decision to deny her writ of habeas corpus was clearly wrong, and Ms. Hall further argues that this Court should issue the requested writ.

■ Ms. Hall first argues that the circuit court was clearly wrong to deny her writ

> relied upon in support thereof shall be deemed to have been previously and finally adjudicated only when at some point in the proceedings which resulted in a conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, there was a decision on the merits thereof after a full and fair hearing thereon and the time for the taking of an appeal with respect to such decision has not expired or has expired, as the case may be, or the right of appeal with respect to such decision has been exhausted, unless said decision upon the merits is clearly wrong.

when, she contends, she was denied due process by the failure of the circuit court to place on the record a "critical stage" of the trial. Ms. Hall asserts that the circuit court either failed to properly instruct Ms. Hall of her right to testify as required by *State v. Neuman*, 179 W.Va. 580, 371 S.E.2d 77 (1988), or failed to place these instructions on the record.

 *Neuman* places the following responsibilities on a trial court:

A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that a defendant's waiver is voluntary, knowing, and intelligent by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, and that if he testifies the prosecution will be allowed to cross-examine him. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right.

Syllabus Point 7, *Neuman supra.*

In the present case the record is unclear as to whether Ms. Hall was advised of her right to testify. The trial transcripts do not reflect that the circuit court gave Ms. Hall her *Neuman* instruction. This omission of the *Neuman* instruction in the record was included in Ms. Hall's direct appeal to this Court. After Ms. Hall filed her appeal, the State filed a Motion to Correct the Record pursuant to Rule 36 of the *West Virginia Rules of Criminal Procedure.*[3] A hearing was conducted on the State's motion, and testimony was offered concerning the *Neuman* instruction. At the hearing, the circuit court relied on the testimony of the prosecutor, the assistant prosecutor, the investigating officer, and the trial judge's own memory, to establish that a *Neuman* instruction had been given.

The circuit court determined that the *Neuman* instruction had been given and that the reason this instruction had not been recorded was due to the error of a substitute court reporter. The trial court judge stated that he clearly recalled giving the *Neuman* instruction right after an off-the-record discussion with counsel, but that the substitute reporter apparently failed to transcribe the given instruction. By order dated December 21, 1994, the record was amended to indicate that Ms. Hall had been given her *Neuman* instruction.

 We are concerned by the circuit court's use of Rule 36 to amend the record in order to demonstrate that the *Neuman* instruction was rendered. The title of Rule 36 demonstrates that the rule was promulgated to correct clerical mistakes and omissions, and it should not be used to recreate substantive stages of a trial. "A court has the inherent power to amend its records in accordance with the facts." *State v. Huffman,* 141 W.Va. 55, 72, 87 S.E.2d 541, 552 (1955). However, "[t]he errors which a judge or court has inherent power to correct ... are limited to clerical and such other errors of record, as prevent it from expressing the judgment rendered." *Highland v. Strosnider,* 118 W.Va. 647, 648, 191 S.E. 531, 532 (1937) (citations omitted).

We therefore do not accept the reconstructed record, and we address the *Neuman* instruction challenge as if the reconstruction had not taken place.

 It is well established that "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syllabus Point 4, *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 254 S.E.2d 805 (1979), *cert. denied,* 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983). Therefore, even assuming the circuit court failed to provide a *Neuman* instruction, in order to prevail, Ms. Hall must demonstrate that the failure of the circuit court to instruct her on

**3.** *W.Va.R.Crim.Pro.* Rule 36 provides:
Rule 36. Clerical mistakes.
 Clerical mistakes in judgments, orders or other parts of the record and errors in the

record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders.

her right to testify was a constitutional violation.

■■■ We have previously determined that the rule in *Neuman* "was merely a procedural/prophylactic rule ..." *State v. Blake*, 197 W.Va. 700, 712, 478 S.E.2d 550, 562 (1996) and that "*Neuman* clarified applicable procedural law only, and not substantive or constitutional law[.]" *Id.* 197 W.Va. at 713, 478 S.E.2d at 563. Based on this analysis we held:

> A violation of *State v. Neuman*, 179 W.Va. 580, 371 S.E.2d 77 (1988), is subject to a harmless error analysis. A rebuttable presumption exists that a defendant represented by legal counsel has been informed of the constitutional right to testify. When a defendant is represented by legal counsel, a *Neuman* violation is harmless error in the absence of evidence that a defendant's legal counsel failed to inform him/[her] of the right to testify, or that the defendant was coerced or misled into giving up the right to testify. When a defendant represents him/[her]self at trial, a *Neuman* violation is harmless error where it is shown that the defendant was in fact aware of his/her right to testify and that the defendant was not coerced or misled into giving up the right to testify.

Syllabus Point 15, *State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998).

Having determined in *Salmons, supra,* that the failure to give a *Neuman* instruction does not rise to constitutional error, we find that the circuit court was not clearly wrong in its denial of Ms. Hall's petition for a writ of habeas corpus and we consequently decline to issue a writ on this issue.

We next examine Ms. Hall's assertion that the circuit court violated her constitutional rights to a fair trial by allegedly shifting the burden of proof onto Ms. Hall. Ms. Hall argues that the State's jury instructions # 2 and # 4 failed to inform the jury that the elements of the crime must be proven beyond a reasonable doubt and further, that the two jury instructions, when combined, allowed the jury to infer the essential elements of the offense of murder from Ms. Hall's use of a deadly weapon.

The State's jury instruction # 2 provided, in part, that if the jury found that Ms. Hall had "shot and killed Morton L. Hall, and such killing was done intentionally, wilfully, premeditatedly, feloniously, unlawfully and with malice ... then the jury may find the defendant, Bonny Lucille Hall, guilty of murder in the first degree[.]" [4] The State's jury instruction # 4 provided:

> The Court instructs the jury that malice, willfulness, deliberation and intent can be inferred by the jury from the defendant's intentional use of a deadly weapon under circumstances which you do not believe afforded the defendant excuse, justification or provocation for her conduct.

Ms. Hall attacks these two instructions on two separate grounds. First, Ms. Hall argues that both instructions fail to inform the jury that the elements of the crime must be proven "beyond a reasonable doubt." Second, Ms. Hall argues that the instructions improperly allowed the jury to infer the essential elements of the offense, *i.e.* "malice, wilfulness, deliberation and intent," from Ms. Hall's use of a deadly weapon.

■■■ We address first the issue of the instructions failing to inform the jury that the elements must be proven beyond a reasonable doubt. We have stated that "[i]n general, the question on review of the suffi-

4. In its entirety, the State's instruction # 2 provided:

> The Court instructs the jury that malice means any wrongful act done willfully or purposely, an action flowing from a wicked and corrupt mind, a think done with evil mind when such act has been accompanied by such circumstances as carry in them the plain indications of a heart regardless of social duty and fatally bent on mischief; that malice is a state of mind and can be deduced from attending circumstance such *as the act itself and the*

*manner, means and circumstances under which it is done; therefore, if the jury believes from all the evidence in this case, that at the time and place alleged in the indictment in this case, the said defendant, Bonny Lucille Hall, shot and killed Morton L. Hall, and that such killing was done intentionally, wilfully, premeditatedly, feloniously, unlawfully and with malice as defined above, then the jury may find the defendant, Bonny Lucille Hall, guilty of murder in the first degree as charged in the indictment in this case.*

ciency of jury instructions is whether the instructions as a whole were sufficient to inform the jury correctly of the particular law[.]" *State v. Miller*, 197 W.Va. 588, 607, 476 S.E.2d 535, 554 (1996). We must examine all of the instructions as a whole to determine whether the jury would have been misled.

A review of the record indicates that the circuit court instructed the jury that it "must consider these instructions as a whole, not picking out one and disregarding the others." The jurors were further instructed that unless they believed "from the evidence that the defendant has been proven guilty beyond a reasonable doubt and to the point where you have abiding faith in such guilt to moral certainty, you should find the defendant not guilty." The jurors were also instructed that they could not "under the law arbitrarily imagine or infer the guilt of the defendant and from such an inference find the defendant guilty, unless you believe that she has been proven guilty by the evidence and beyond a reasonable doubt[.]"

We find that reading the jury instructions as a whole, it is clear that they were adequate to inform a reasonable juror that the State had the burden to prove the elements of the crime beyond a reasonable doubt.

 We next address the second jury instruction issue: whether the instructions improperly allowed the jury to infer essential elements of the offense of murder of the first degree. Ms. Hall argues that the State's jury instructions # 2 and # 4, when read together, provide an impermissible inference of the essential elements of the crime murder in the first degree.

Ms. Hall relies on *State v. Jenkins*, 191 W.Va. 87, 443 S.E.2d 244 (1994) for the proposition that "[i]t is erroneous in a first degree murder case to instruct the jury that if the defendant killed the deceased with the use of a deadly weapon, then intent, malice, willfulness, deliberation, and premeditation may be inferred from that fact, where there is evi-

dence that the defendant's actions were based on some legal excuse, justification, or provocation." *Id.* Syllabus Point 6.

Ms. Hall's argument in the present case is the same argument set forth and rejected in *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996).[5] We determined in *Miller* that the reach of *Jenkins* must be limited to its "carefully crafted" words and that it should not be over-expanded. *Id.* 197 W.Va. at 609, 476 S.E.2d at 556. In *Miller* we also stated that:

> In instructing a jury as to the inference of malice, a trial court must prohibit the jury from finding any inference of malice from the use of a weapon until the jury is satisfied that the defendant did in fact use a deadly weapon. If the jury believes, however, there was legal justification, excuse, or provocation, the inference of malice does not arise and malice must be established beyond a reasonable doubt independently without the aid of the inference.

*Id.*, Syllabus Point 7, in part.

In *Jenkins* we also adhered to the law that "[i]n a homicide trial, malice and intent may be inferred by the jury from the defendant's use of a deadly weapon, under circumstances which the jury does not believe afforded the defendant excuse, justification or provocation for his conduct." Syllabus Point 5, *Jenkins*, *supra* (citations omitted). The jury in the instant case was properly instructed concerning the defense of insanity. The jury was instructed that:

> ... if a preponderance of the evidence introduced by [Ms. Hall] or by the State raises doubt upon the issue of her sanity at that time, the presumption of sanity ceases to exist; that the State then has the burden to establish the sanity of the accused beyond a reasonable doubt just as it must prove all other elements of the crime, and, that if the whole proof upon that issue leaves the jury with a reasonable doubt as

**5.** The instruction in *Miller* provided:

The Court instructs the jury that in a prosecution for murder, if the State proves beyond a reasonable doubt that the defendant, without lawful justification, excuse or provocation,

fired a deadly weapon in the direction where a person was located then from such circumstances it may be inferred that the defendant acted with malice and the intent to kill.

to the defendant's sanity at that time, the jury must accord her the benefit of the doubt and acquit her.

The jury obviously did not find that Ms. Hall was insane at the time of the shooting and subsequently found her guilty of murder in the first degree.

A reading of the jury instructions as a whole indicates that *Jenkins* was not violated.

██ Since the trial in this case, we have determined that "[i]n a murder case, an instruction that a jury may infer malice and the intent to kill where the State proves beyond a reasonable doubt that the defendant, without lawful justification, excuse or provocation, shot the victim with a firearm, does not unconstitutionally shift the burden of proof." Syllabus Point 2, *State v. Browning*, 199 W.Va. 417, 485 S.E.2d 1 (1997).

Based on all of the above, we find that the instructions rendered were permissible under *Jenkins* as *Jenkins* was later expounded upon by *Miller* and *Browning*. Consequently, we deny Ms. Hall's petition for a writ of habeas corpus on the issue of the jury instructions.

### III.

In conclusion, we find that the circuit court's denial of Ms. Hall's petition for a writ of habeas corpus was not clearly wrong, and we earlier denied the appeal of that action. Again, upon further review of the circuit court's decision, in the instant petition, we deny the requested writ of habeas corpus.

Writ Denied.

Justice STARCHER dissents.