624 S.E.2d 752

**STATE of West Virginia ex rel. Donald Corbin, Petitioner Below, Appellant,**

v.

**William S. HAINES, Warden, Respondent Below, Appellee.**

No. 32502.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 7, 2005.

Filed: Nov. 17, 2005.

---

J.L. Hickok, Paul R. Stone, Appellate Advocacy Division, Public Defender Services, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, for Appellee.

The opinion of the Court was delivered PER CURIAM.

**PER CURIAM.**

In the instant matter, Appellant Donald Corbin seeks reversal of the Circuit Court of Putnam County's January 14, 2004 Order denying his Petition for Writ of Habeas Corpus. Before the circuit court, Appellant argued that his 1993 conviction for the felony offense of murder in the first degree, with a recommendation of mercy, should be set aside. Appellant's primary contention was that Jury Instruction No. 6 violates this Court's holding in *State v. Jenkins*, 191 W.Va. 87, 443 S.E.2d 244 (1994). After consideration of the trial record and the parties' arguments, including the testimony of Appellant at the July 27, 2001 omnibus hearing, the Circuit Court of Putnam County denied Appellant's Petition for Habeas Corpus Relief. Appellant timely appealed the January 14, 2004 Order to this Court. Appellant's Petition for Appeal was accepted by Order dated January 11, 2005. For the reasons set forth below, we affirm the circuit court's January 14, 2004 Order.

**I.**

## FACTUAL AND PROCEDURAL HISTORY

On January 29, 1993, Donald R. Corbin was convicted of the felony offense of murder in the first degree, with a recommendation of mercy, for the June 23, 1992 execution-style murder of Angela Dailey. Ms. Dailey's decomposing body was found in a secluded, wooded area of Round Knob Road in Putnam County, West Virginia on June 26, 1992. She had suffered a gunshot wound inflicted to her left eye.

At trial, Appellant presented only one witness,[1] himself, and only one defense—that he was not the shooter. Instead, he argued that witness Elaine Gandee was the actual shooter.[2] A brief discussion of the circumstances surrounding Angela Dailey's murder is necessary to place Appellant's arguments and this Court's analysis in proper perspective.

On June 22, 1992, Donald R. Corbin removed his father's 0.25 caliber semi-automatic handgun from a locked gun safe and placed it in his truck.[3] He then picked up his friend, Shawn Poore. They later "bumped into" Elaine Gandee, Shawn Poore's girlfriend. Ms. Gandee joined the men, the three went to a Go-Mart, purchased some beer and drove to a hill in Charleston where they drank the beer. According to Ms. Gandee's trial testimony, while they were there Appellant stated that something needed to be done about Angela Dailey telling people about "the robbery"[4] and that he would have to shoot the victim in the head because a bullet would bounce off of her.[5] Upon leaving the hill in Charleston,

---

1. Appellant attempted to call Shawn Poore as a witness for the defense. At the time of Appellant's trial for the murder of Angela Dailey, Mr. Poore was in jail awaiting trial on charges arising from the death of Angela Dailey. It appears from the record that Mr. Poore had been charged with conspiracy to commit murder, but it is unclear from the record as to whether or not he was also charged with murder in either the first or second degree. Mr. Poore did not testify after his Fifth Amendment privilege against self incrimination was invoked by his attorney on his behalf. There were also questions as to whether Mr. Poore was competent to testify at the time of Appellant's trial. Appellant claims one reason he attempted to present Mr. Poore as a witness at trial was to question him regarding a letter Appellant maintains Mr. Poore wrote implying Ms. Gandee was the shooter.

2. Elaine Gandee pled guilty to second degree murder and conspiracy to commit murder arising from the death of Angela Dailey prior to testifying at Appellant's trial.

3. Mr. Corbin testified that he took the gun that night for his own protection.

4. "The robbery" refers to an allegedly staged robbery at Mr. Corbin's place of employment in May 1992 in which Mr. Corbin was allegedly involved.

5. Ms. Dailey was, apparently, a very large woman.

the trio went to the home where Angela Dailey was staying and picked her up.[6] On the way, Ms. Gandee alleges Appellant suggested taking Ms. Dailey to a boat dock in Poca, shooting her and throwing her body in the river.

After picking up the victim, the group purchased more beer and drove to the Raymond City boat ramp near Poca, West Virginia, also referred to as the "coal tipple." While at the coal tipple, Mr. Corbin and the victim went for a walk. The two returned when a group of people the victim and Ms. Gandee knew arrived in a red Blazer. Ms. Gandee testified that Appellant stated he was about to kill Ms. Dailey when the red Blazer pulled up. Mr. Corbin, Ms. Gandee, Mr. Poore and the victim subsequently left the coal tipple and drove to a cemetery. Ms. Gandee testified that Appellant asked her if he should kill Ms. Dailey there. Although Ms. Gandee maintained she thought Mr. Corbin was joking when he would talk about shooting Ms. Dailey that evening, she testified she told him that he should talk to Ms. Dailey about his belief she was talking about the robbery before doing anything. The group left the cemetery at the request of the victim who became upset because she had a child buried there.

Appellant then drove the group to a secluded area of Red Knob Road in Putnam County, West Virginia, the location where the victim's body was later found. Upon arriving, Ms. Gandee testified that she and the victim walked away from the truck so she could use the bathroom while Ms. Dailey blocked the men's view. Before returning to the truck, she told Ms. Dailey that Mr. Corbin wanted to talk to her and "hollered for Don to come over." Ms. Gandee testified that she returned to the truck to get a cigarette after Mr. Corbin walked over to Ms. Dailey. She testified that she heard a shot, turned and saw Appellant over the victim's body. She also testified that Mr. Poore then helped Mr. Corbin roll the victim's body over the hill.

Conversely, Appellant testified that when they arrived at Red Knob Road, Ms. Gandee and the victim walked away from the truck into the woods. Appellant testified that Ms. Gandee and the victim had been arguing over Mr. Poore that evening before the shooting. According to Appellant, after the women walked into the woods he heard a shot, looked over and saw Ms. Gandee over the victim's body. Additionally, he testified that Mr. Poore took the gun from Ms. Gandee after the shooting and gave it back to him. He could not explain how Ms. Gandee obtained the gun before allegedly shooting Ms. Dailey. Appellant admitted that he suggested that they leave the scene and that he told Ms. Gandee if the police approached her, she should get a lawyer. When he returned home, he put the gun back in his father's gun safe. The evidence at trial indicated that the bullet recovered from Ms. Dailey's body was shot from Appellant's father's gun.

There was no testimony or other evidence to suggest that anyone other than Donald Corbin possessed a gun on the night in question. Mr. Corbin offered no evidence suggesting a justification or excuse for Ms. Dailey's murder. Additionally, a second witness, Bobby Ewing, testified that several days before Ms. Dailey's murder, Mr. Corbin told him that "he'd have to get rid of [Ms. Dailey]" because she was talking about the robbery.

The case was submitted to the jury with instructions that they could render four verdicts: (1) guilty of murder in the first degree; (2) guilty of murder in the first degree, with a recommendation of mercy[7]; (3) guilty of murder in the second degree; or (4) not guilty. The jury was instructed that "Murder of the first degree is committed when one person kills another person unlawfully, wilfully, maliciously, deliberately and premediatedly" and that "Murder of the second

---

6. Ms. Gandee testified that it was Appellant's idea to go pick up Angela Dailey, though Appellant testified Ms. Gandee wanted to go get Ms. Dailey.

7. An instruction was provided that if a verdict of murder in the first degree, with a recommenda-

tion of mercy, was rendered, the Appellant would be confined in a penitentiary for life, "but shall be eligible for parole after having served a minimum of ten years of such sentence" and that without a recommendation of mercy, the Appellant would be confined for the rest of his natural life, without eligibility for parole.

degree is committed when one person kills another person unlawfully, wilfully, maliciously, but without deliberation or premeditation." Jury Instruction Number 6 stated:

> The Court further instructs the jury that to convict one of murder it is not necessary that malice should exist in the heart of the defendant, Donald Corbin, against the victim, Angela Dailey. If the jury believes from the evidence that the defendant was guilty of shooting the deceased with a deadly weapon and of killing her, the intent, the malice, and the willfulness, deliberation and premeditation may be inferred from the act.[8]

Throughout the instructions given, the trial court referenced the presumption that Mr. Corbin was innocent and the State's burden to prove each element of the offense beyond a reasonable doubt. Ultimately, the jury returned a verdict of guilty of the felony offense of murder of the first degree, with a recommendation of mercy.

Appellant's direct appeal of his 1993 conviction was rejected by this Court on March 10, 1994. The sole issue raised in the direct appeal was the admission into evidence of the "lethal bullet" and evidence linking the bullet to Appellant's father's gun.

On October 21, 1998, Appellant filed a pro se petition for Habeas Corpus Relief in the Circuit Court of Putnam County. The circuit court appointed counsel to represent Mr. Corbin's interests.[9] An Amended Petition for Writ of Habeas Corpus ad Subjiciendum was filed on April 24, 2001, followed by a Supplemental Amended Petition for Writ of Habeas Corpus ad Subjiciendum on July 19, 2001. The circuit court held an omnibus hearing on the petitions on July 27, 2001. The primary grounds for relief asserted in Appellant's petitions and at the omnibus

hearing focus on the alleged impropriety of Jury Instruction No. 6, including counsel's actions relating to the same, the "fatal bullet" evidence, the testimony of Elaine Gandee and evidence relating to a letter allegedly written by Shawn Poore purporting to name Elaine Gandee as the shooter.[10] By Order dated January 14, 2004, the Circuit Court of Putnam County denied Appellant's Petition for Writ of Habeas Corpus.

On appeal to this Court, Appellant argues the impropriety of Instruction No. 6, that the circuit court failed to comply with the specific findings and reasoning requirements of W. Va.Code § 53–4A–7(c)[11], that the circuit court erred in refusing the introduction of the Shawn Poore letter into the Habeas record, and that he received ineffective assistance of counsel at both the trial and appellate levels as neither counsel raised the alleged unconstitutionality of Jury Instruction No. 6. This Court has considered the arguments presented by the parties set forth in their briefs and oral presentation and the underlying record, including the 1993 trial transcript. In light of the authorities discussed below, we find the Appellant's arguments to be without merit and affirm the circuit court's denial of Appellant's Petition for Writ of Habeas Corpus.

## II.

### STANDARD OF REVIEW

The instant matter presents as an appeal of a circuit court's denial of a petition for writ of habeas corpus as authorized by W. Va.Code § 53–4A–9 (1967). "On an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being

---

8. The following phrase was removed from the end of the instruction at the request of defense counsel and the instruction was given without objection. "And such malice may not be directed against any particular person, but such as shown a heart regardless of social duty and fatally bent on mischief."

9. Counsel originally appointed by the circuit court was permitted to withdraw. Appellant's current counsel was subsequently appointed.

10. According to the *Losh* checklist presented to the circuit court Appellant asserted the following

grounds for relief: No. 13 failure of counsel to take appeal; No. 17 State's knowing use of perjured testimony by prosecutor; No. 21 Ineffective assistance of counsel; No. 40 Claims concerning use of informers to convict; No. 42 Instructions to jury; and No. 45 Sufficiency of evidence.

11. Although this ground was listed on Appellant's docketing statement filed with this Court, it has apparently been abandoned on appeal as it was not briefed. Even if Appellant intended to pursue this ground, upon review of the January 14, 2004 Order, we find it is sufficient to comply with statutory requirements.

in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2, *Perdue v. Coiner,* 156 W.Va. 467, 194 S.E.2d 657 (1973). In *State ex rel. Valentine v. Watkins,* 208 W.Va. 26, 31, 537 S.E.2d 647, 652 (2000), this Court noted that courts are typically afforded broad discretion when determining whether sufficient grounds exist to issue a writ of habeas corpus. "Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syl. Pt. 1, *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976). To the extent Appellant raises constitutional questions, our standard of review is de novo "[b]ecause interpretations of the West Virginia Constitution, along with interpretations of statutes and rules, are primarily questions of law." *Phillip Leon M. v. Greenbrier County Bd. of Educ.,* 199 W.Va. 400, 404, 484 S.E.2d 909, 913 (1996), *modified on other grounds by Cathe A. v. Doddridge County Bd. Of Educ.,* 200 W.Va. 521, 490 S.E.2d 340 (1997); *accord* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review.").

## III.

## DISCUSSION

### A.

### Jury Instruction No. 6

■ Appellant's primary argument on appeal is that the circuit court, in its order denying his petition for writ of habeas cor-

pus, erred by finding that Jury Instruction No. 6 was a correct statement of West Virginia law at the time it was given. Appellant argues that Jury Instruction No. 6 was found to be unconstitutional in *State v. Jenkins,* 191 W.Va. 87, 443 S.E.2d 244 (1994).[12] Appellant reads *Jenkins* too broadly. Jury Instruction No. 6 does not violate the principles of *Jenkins* and remains a correct statement of West Virginia law in cases where no evidence of legal excuse, justification or provocation is presented to the jury for consideration.

■ This Court's opinion in *Jenkins* was issued two weeks after the refusal of Appellant's direct appeal and fourteen months after the jury's verdict. In *Jenkins,* the defendant presented evidence that he had not intended to shoot the victim, only to scare him, and that his coordination and mental capacity were impaired due to marijuana and alcohol. *Jenkins,* 191 W.Va. at 92, 443 S.E.2d at 249. However, the jury was instructed that they could infer intent, malice, wilfulness, deliberation and premeditation solely from the act of shooting a deadly weapon and killing the victim.[13] In Syllabus Points 5 and 6, we held:

> 5. " 'In a homicide trial, **malice and intent may be inferred by the jury from the defendant's use of a deadly weapon, under circumstances which the jury does not believe afforded the defendant excuse, justification or provocation for his conduct.** Whether premeditation and deliberation may likewise be *inferred,* depends upon the circumstances of the case.' Point 2, Syllabus, *State v. Bowles,* 117 W.Va. 217[, 185 S.E. 205 (1936)]." Syllabus, *State v. Johnson,* 142 W.Va. 284, 95 S.E.2d 409 (1956).
>
> 6. It is erroneous in a first degree murder case to instruct the jury that if the

---

12. Appellant also argues that *Jenkins* should be afforded retroactive effect under the principles announced in *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977). Because we find Jury Instruction No. 6 to be proper under the circumstances of this case, we decline to address the retroactivity of *Jenkins.*

13. The instruction at issue in *Jenkins* provided:
   The Court instructs the jury that to convict one of murder, it is not necessary that malice should exist in the heart of the defendant, Ronnie Wayne Jenkins, against the deceased.

If the jury believes from the evidence that the defendant, Ronnie Wayne Jenkins, was guilty of shooting with a deadly weapon, such as a .30–.30 rifle, the deceased and of killing him, the intent, the malice and the wilfulness, deliberation and premeditation may be inferred from the act, and such malice may not be directed against any particular person, but such acts by Ronnie Wayne Jenkins have shown a heart regardless of social duty and fatally bent on mischief.
*Jenkins,* 191 W.Va. at 91, 443 S.E.2d at 248, fn. 4.

defendant killed the deceased with the use of a deadly weapon, then intent, malice, willfulness, deliberation, and premeditation may be inferred from that fact, **where there is evidence that the defendant's actions were based on some legal excuse, justification, or provocation.** To the extent that the instruction in *State v. Louk*, 171 W.Va. 639, 643, 301 S.E.2d 596, 600 (1983), is contrary to these principles, it is disapproved.

(Emphasis added). Thus, whether or not the jury may properly be instructed to infer malice is dependent upon whether there is a legal excuse, justification or provocation presented for consideration. Where no legal excuse, justification or provocation has been presented as a defense, it is not error to instruct the jury that it may infer malice and intent. Likewise, premeditation and deliberation may be inferred in appropriate circumstances.

Contrary to Appellant's suggestion, the portion of the *Jenkins* decision relevant to the inference of malice does not appear to be premised on constitutional grounds or an unconstitutional shifting of the burden of proof. Although *Jenkins* does include a discussion regarding an unconstitutional shifting of the

burden of proof, the same is made in reference to the second half of the *Jenkins* instruction, an instruction that was not presented to the jury in the instant matter. The second paragraph of the *Jenkins* instruction at issue instructed the jury that it may find the defendant guilty of first degree murder if it found he shot the victim with a deadly weapon.[14] This Court found that instructing a "jury that it may find the defendant guilty of first degree murder if it finds that he used a deadly weapon to kill the deceased unconstitutionally shifts the burden of proof." Syl. Pt. 8, *Jenkins*. As the trial court did not instruct the jury that it may find Appellant guilty of first degree murder solely from his use of a deadly weapon, an unconstitutional burden shifting did not occur.

Subsequent to *Jenkins*, this Court has consistently validated jury instructions which permit the jury to infer malice and intent where the defendant has shot the victim with a firearm under circumstances not affording the defendant an excuse, justification or provocation.[15] In Syllabus Point 7 of *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996), this Court held:

> In instructing a jury as to the inference of malice, a trial court must prohibit the jury

---

**14.** The second paragraph of the *Jenkins* instruction stated:

> Therefore, if after fully and carefully considering all the evidence in this case, the jury believes beyond a reasonable doubt that Ronnie Wayne Jenkins committed the crime of "murder in the first degree" by shooting with a deadly weapon the deceased, then Ronnie Wayne Jenkins may be found guilty of murder in the first degree of Billy Joe Adkins, as set forth in the *indictment*. (Citation omitted; emphasis in original).

*Jenkins*, 191 W.Va. at 91, 443 S.E.2d at 248, fn. 4.

**15.** *See, e.g., State v. Bradshaw*, 193 W.Va. 519, 543, 457 S.E.2d 456, 480 (1995) ("The Court instructs the jury that malice and intent may be inferred from the defendant's use of a deadly weapon, under circumstances which you believe do not afford the defendant excuse, justification or provocation for his conduct. Where it is shown that the defendant used a deadly weapon in the commission of a homicide, then you may find the existence of malice from the use of such weapon and other surrounding circumstances, unless there are explanatory or mitigating circumstances surrounding the case which you believe affords the defendant excuse, justification

or provocation for his conduct. You are not obliged to find, however, and you may not find the defendant guilty, unless you are satisfied that the State has established the element of malice beyond a reasonable doubt."); *State v. Miller*, 197 W.Va. 588, 606, 476 S.E.2d 535, 553 (1996) ("The Court instructs the jury that in a prosecution for murder, if the State proves beyond a reasonable doubt that the defendant, without lawful justification, excuse or provocation, fired a deadly weapon in the direction where a person was located then from such circumstances it may be inferred that the defendant acted with malice and the intent to kill."); *State v. Browning*, 199 W.Va. 417, 421, 485 S.E.2d 1, 5 (1997) ("The Court instructs the Jury that in a prosecution for murder, if the State proves beyond a reasonable doubt that the defendant, without lawful justification, excuse or provocation, shot the deceased with a firearm, then from such circumstances it may be inferred that the defendant acted with malice and the intent to kill."); *State v. Liller*, 207 W.Va. 696, 701, 536 S.E.2d 120, 126 (2000)(per curiam) ("The Court instructs the jury that malice, willfulness, deliberation and intent can be inferred by the jury from the defendant's intentional use of a deadly weapon under circumstances which you do not believe afforded the defendant excuse, justification or provocation for her conduct.").

from finding any inference of malice from the use of a weapon until the jury is satisfied that the defendant did in fact use a deadly weapon. If the jury believes, however, there was legal justification, excuse, or provocation, the inference of malice does not arise and malice must be established beyond a reasonable doubt independently without the aid of the inference. If requested by a defendant, the trial court must instruct the jury that the defendant has no obligation to offer evidence on the subject and the jury may not draw any inference from the defendant's silence.

We have also held:

Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. The trial court, therefore, has broad discretion in formulating its charge to the jury, so long as it accurately reflects the law. Deference is given to the circuit court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed for an abuse of discretion.

Syl. Pt. 15, *State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995). Upon reviewing the jury charge as a whole, this Court concludes the trial court sufficiently instructed the jury that the State had the burden of proving, beyond a reasonable doubt, each element of the charge of first degree murder, including malice, that the Appellant was to be presumed innocent unless the State met its burden, and that the jury must return a verdict of not guilty unless the State proved, beyond a reasonable doubt, each element of the charge of murder, including malice.

■ This Court is unwilling to find error in failing to instruct the jury that it may not

infer malice where the circumstances provide evidence of legal excuse, justification or provocation where there was no such evidence for the jury to consider. Even if we were to accept Appellant's argument that Jury Instruction No. 6 improperly shifted the burden of proof as to the element of malice, habeas corpus relief is not warranted. If an improper burden shifting had occurred, the same would constitute harmless error where ample evidence of malice exists on the record for the jury's consideration. *See, Gilbert v. Moore*, 134 F.3d 642, 648–50 (4th Cir.1998) (finding issuance of improper burden shifting instruction to be harmless error where ample evidence of malice existed on record). Appellant's sole defense was that he was not the shooter. He presented no argument of legal excuse, justification or provocation. As demonstrated by the recitation of facts set forth above, there was ample evidence on the record for the jury to find malice, without resort to the permissive inference contained in the instructions. Two witnesses testified that the Appellant stated the need to "get rid of" the victim and his intent to kill her in the days proceeding this execution style murder. Not only did Mr. Corbin testify in his own defense to contradict this adverse witness testimony, but he afforded himself, through his counsel, the opportunity to vigorously cross-examine the adverse witnesses.[16] The verdict indicated that jury chose not to accept Appellant's version of the events preceeding Ms. Dailey's death. It is the role of the jury, and not a court on appeal or on review of a habeas corpus petition, to determine the credibility of witnesses. Syl. Pt. 2, *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967) ("The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses.").

The Circuit Court of Putnam County correctly found that Jury Instruction No. 6 was a proper instruction.[17] A jury may infer malice under the appropriate circumstances.

---

**16.** The jury learned of Ms. Gandee's second degree murder plea and her agreement to testify against Appellant during her testimony. The trial court, however, did not allow the jury to learn that Appellant was free on bond while awaiting sentencing on a separate second degree murder plea in Kanawha County, West Virginia at the time of Ms. Dailey's murder.

**17.** This instruction was only proper because no evidence existed to support an instruction based upon *Bowles* or *Bradshaw*. An instruction based upon *Bowles* or *Bradshaw* would have been proper if Appellant had asserted a defense of justification or excuse. Had a defense of justification or excuse been asserted, the trial court would be required to instruct the jury that malice and

In the instant matter, there was no evidence of legal excuse, justification or provocation for the jury to consider. Further, ample evidence suggesting malice, intent, deliberation and premeditation existed for the jury to determine that the State had met its burden of proof without the inference instruction.

### B.

### Ineffective Assistance of Counsel Claims

Appellant likewise sought relief on the grounds that he received ineffective assistance of counsel on both the trial and appellant levels. As to trial counsel, he claims counsel was ineffective for failing to object to Jury Instruction No. 6 on constitutional grounds. Likewise, Appellant claims appellate counsel was ineffective for failing to raise the constitutionality of Jury Instruction No. 6 on direct appeal. Appellant argues that counsel should have anticipated our decision in *Jenkins,* particularly in light of federal case law regarding improper burden shifting. In light of our holding that Jury Instruction No. 6 does not violate *Jenkins* under the circumstances of this case, Appellant's claims of ineffective assistance of counsel are without merit. The failure to challenge an unobjectionable jury instruction simply does not rise to the level of ineffective assistance of counsel.

### C.

### The "Shawn Poore" Letter

■ Appellant argues that the Circuit Court of Putnum County erred by failing to allow introduction of a letter allegedly written by Shawn Poore which implicitly names Elaine Gandee as the shooter into evidence at the omnibus hearing. At the omnibus hearing, Appellant likewise argued that the trial court erred by failing to introduce the letter into evidence at trial. Appellant did not offer an explanation as to how he came into possession of a letter allegedly sent by Shawn Poore to Elaine Gandee. Nor was a foundation laid before either the trial or habeas court for the introduction of the letter. Appellant's primary argument was that the

intent could not be inferred if the jury believed the defense of justification or excuse.

letter fell within Rule 804(b)(3) of the *West Virginia Rules of Evidence* which provides:

> The following are not excluded by the hearsay rule if the declarant is unavailable [18] as a witness:
>
> (3) Statement against interest.—A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Appellant failed to explain how vaguely implying that Elaine Gandee was the actual shooter in a letter written to her could be deemed a statement against Shawn Poore's interest. Moreover, there was no attempt at any level to authenticate the letter as required by Rule 901 of the *West Virginia Rules of Evidence.* Under the circumstances, we find no error in the lower court's refusal to consider the Shawn Poore letter.

### IV.

### CONCLUSION

Having throughly reviewed the trial court record, the record before the Circuit Court of Putnam County upon Appellant's Petition for Writ of Habeas Corpus, the parties arguments and the pertinent legal authorities, we find the Circuit Court of Putnam County did not err in denying the Petition for Writ of Habeas Corpus. Accordingly, the January 14, 2004 Final Order Denying Habeas Corpus Relief issued by the Circuit Court of Putnam County is affirmed.

AFFIRMED

18. Appellant claims the unavailability requirement was satisfied when Shawn Poore did not testify at trial due to his Fifth Amendment right against self-incrimination.