**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.)  No. 23-19** (Mercer County CC-28-2019-F-207)

**Darrell Wesley Hazelwood,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Darrell Wesley Hazelwood appeals the Circuit Court of Mercer County's December 15, 2022, order resentencing him, for purposes of pursuing an appeal, to a determinate term of forty years of incarceration following his conviction for second-degree murder.[1] The petitioner argues that the evidence was insufficient to support that conviction. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

The petitioner was indicted in October 2019 for the first-degree murder of Tessa Hill (the "victim"), and he proceeded to a jury trial on that charge on August 18, 2020. Ronald Ferrell, the victim's boyfriend and an acquaintance of the petitioner, testified that he was with the victim and the petitioner on August 10, 2019, and, following a time during which the victim and the petitioner were alone together, the petitioner returned to Mr. Ferrell and told him, "[Y]ou better slap [the victim] around because if you don't, me and you are going to throw down."[2] The three individuals then separated.

Later in the day, Mr. Ferrell and the victim reunited, and he drove the victim to her parents' house, which was located close to the petitioner's home. Mr. Ferrell testified that he remained in his vehicle while the victim went inside her parents' home. The victim's daughter, who was inside the home, testified that the victim said she was "scared," but she did not identify the cause of her fear. The victim then exited the home to smoke a cigarette. Mr. Ferrell testified that as the victim was walking from the home, the petitioner walked "straight up the driveway" and "pushed" the victim toward the back of the vehicle. Mr. Ferrell attempted to exit his vehicle, but the victim shut his car door and instructed Mr. Ferrell to stay inside. The petitioner and the victim, who were

---

[1] The petitioner appears by counsel Paul R. Cassell. The State appears by Attorney General Patrick Morrisey and Deputy Attorney General Andrea Nease Proper.

[2] Mr. Ferrell testified that he interpreted the petitioner's warning about "throw[ing] down" to mean physically fight. It is not known what prompted the petitioner to make the comment.

arguing, proceeded to the middle of the road. The victim's daughter testified that she came outside after hearing the victim "screaming" for the victim's father, Larry White, and she saw the petitioner's hands around the victim's neck. The victim's daughter testified that she told the petitioner to leave the victim alone, and she threw gravel at him.

Mr. Ferrell then exited his vehicle. As he started toward the petitioner, the petitioner said, "Right here's what I want." Mr. Ferrell took the remark to mean that the petitioner wanted to fight him, and the two started fighting. Mr. Ferrell testified that "all [he could] remember was . . . just hitting him" and, after taking the petitioner to the ground, "hitting his head on the asphalt." Mr. Ferrell did not deny intending to hurt the petitioner. The victim got onto Mr. Ferrell's back to try to stop the fight. Mr. White exited his home and attempted to break up the altercation by removing the victim from Mr. Ferrell's back and yelling at Mr. Ferrell to stop hitting the petitioner and/or pulling him from the petitioner. Mr. Ferrell stopped, and as Mr. Ferrell walked away, he "heard a gunshot and . . . heard a bullet whiz by." The victim's daughter testified that she saw the petitioner "with a gun pointed at [Mr. Ferrell] and had shot the gun at [Mr. Ferrell]." Mr. White, too, testified that the petitioner "went behind his back, pulled out a weapon, cocked the weapon, fired one shot at [Mr. Ferrell]." The victim's daughter ran back inside the home to call 9-1-1. Mr. White testified that the petitioner swung around immediately after shooting at Mr. Ferrell and said, "This will teach you to double team [me]." The petitioner then shot the victim, who was still lying on the ground after Mr. White had removed her from Mr. Ferrell's back. Mr. White testified that the petitioner then pointed the gun at him, but the petitioner lowered it without firing it and ran away. The victim died from a gunshot wound to the head.

Before it began its deliberations, the jury was instructed that it could return one of five possible verdicts: guilty of first-degree murder, guilty of first-degree murder with a recommendation of mercy, guilty of second-degree murder, guilty of voluntary manslaughter, or not guilty. It was further instructed that "malice"—an element of first- and second-degree murder—could be inferred from the intentional use of a deadly weapon under circumstances that do not provide excuse, justification, or provocation, and it was instructed on the meaning of "reasonable provocation" and other concepts relevant to malice and provocation. The jury found the petitioner guilty of second-degree murder.

The petitioner filed a motion for a new trial on the ground that the evidence was sufficient to sustain a conviction no greater than voluntary manslaughter. The court denied the motion and sentenced the petitioner to forty years of incarceration. The court resentenced the petitioner on December 15, 2022, so that he could pursue the instant appeal.

In his single assignment of error, the petitioner asserts that the circuit court erred in denying his motion for a new trial because there was insufficient evidence that he acted with malice, particularly in view of the "clear provocation" of the petitioner by Mr. Ferrell's "merciless . . . beating." The petitioner maintains that the evidence supports only voluntary manslaughter. *See* Syl. Pts. 2 & 3, in part, *State v. Drakes*, 243 W. Va. 339, 844 S.E.2d 110 (2020) (holding that second-degree murder "is the unlawful, intentional killing of another person with malice, but without deliberation and premeditation," and that "intent without malice . . . is the distinguishing feature of voluntary manslaughter").

Our review of a circuit court's ruling on a motion for a new trial is deferential:

> We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, in part, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). Challenges to the sufficiency of the evidence to support a conviction are particularly demanding. This Court reviews the evidence adduced at trial "in the light most favorable to the prosecution," credits "all inferences and credibility assessments that the jury might have drawn in favor of the prosecution," and will only set aside a verdict "when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Put simply, "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 1, in part.

Malice, as the circuit court instructed, "is defined as an action flowing from a wicked and corrupt motive, a thing done with wrongful intent, under circumstances as carry in them the plain indication of a heart heedless of social duty and fatally bent on mischief." *See State v. Burgess*, 205 W. Va. 87, 89, 516 S.E.2d 491, 493 (1999) (defining "malice" similarly). And malice "may be inferred . . . from the defendant's use of a deadly weapon, under circumstances which the jury does not believe afforded the defendant excuse, justification or provocation for his conduct." Syl. Pt. 1, in part, *State ex rel. Corbin v. Haines*, 218 W. Va. 315, 624 S.E.2d 752 (2005) (quoting Syl. Pt. 5, *State v. Jenkins*, 191 W. Va. 87, 443 S.E.2d 244 (1994)). However, because "passion and malice are inconsistent concepts," we have held that "[a] sudden intentional killing with a deadly weapon, by one who is not in any way at fault, in immediate resentment of a gross provocation, is *prima facie* a killing in heat of blood, and, therefore, an offense of no greater degree than voluntary manslaughter." *State v. Gangwer*, 169 W. Va. 177, 187-88, 286 S.E.2d 389, 396 (1982) (quoting Syl. Pt. 10, *State v. Clifford*, 59 W. Va. 1, 52 S.E. 981 (1906)).

The evidence showed that, early in the day on August 10, 2019, the petitioner had voiced his displeasure with the victim by instructing Mr. Ferrell to "slap [her] around." Later, the petitioner confronted the victim at her parents' house, pushing her and wrapping his hands around her neck. Only then—after actions by the petitioner that cannot be described as leaving him without fault in any way—did Mr. Ferrell intervene. Further, by the time the petitioner pulled his gun (unquestionably, a deadly weapon), the fight had ended, Mr. Ferrell was walking away, and the victim was lying defenseless on the ground. The petitioner nevertheless fired a shot at Mr. Ferrell, turned, aimed at the victim, and fired a lethal shot to her forehead. Under these circumstances, any rational trier of fact could have found malice proven beyond a reasonable doubt, and the evidence was also such that the jury could have found that the petitioner was not without fault or grossly provoked, so there is no basis upon which to set aside the jury's verdict.

For the foregoing reasons, we affirm.

Affirmed.

3

**ISSUED:** June 10, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn