# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 15-0582** (McDowell County 14-F-62-M)

**Wesley Owen Payne,**
**Defendant Below, Petitioner**

**FILED**

**November 21, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Wesley Owen Payne, by counsel Thomas H. Evans III, appeals the Circuit Court of McDowell County's May 14, 2015, order resentencing him to a term of incarceration of thirty years for his conviction of second-degree murder. The State, by counsel Jonathan E. Porter, filed a response. On appeal, petitioner alleges that the circuit court erred in denying both his motion for judgment of acquittal[1] and his motion for a new trial. Petitioner also alleges that West Virginia Code § 61-2-1 is unconstitutionally vague.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 19, 2013, petitioner Wesley Owen Payne shot and killed Donnie Baker. During the February of 2014 term of court, petitioner was indicted on one count of first-degree murder and one count of abduction. Petitioner's jury trial commenced in January of 2015 and continued for three days. At trial, petitioner claimed the shooting was in self-defense. The only witness to the shooting was Lisa Hughes, who was romantically involved with both petitioner and the victim. At trial, testimony established that the dispute between petitioner and the victim started because Ms. Hughes was involved in a relationship with petitioner for over twenty-five years and suddenly left him to be with the victim. Evidence showed that Ms. Hughes and the victim called 911 on another occasion out of fear of petitioner, when he previously arrived at the victim's home unannounced.

---

[1] Petitioner's motion below was actually styled "Motion To Strike Verdict And To Grant New Trial." While Rule 33 of the West Virginia Rules of Criminal Procedure allows criminal defendants to move for a new trial, the Rules do not allow for a motion to strike a verdict. Instead, Rule 29 allows criminal defendants to move for judgment of acquittal. As such, the Court will refer to petitioner's "Motion To Strike Verdict" as a motion for judgment of acquittal in this memorandum decision.

1

In regard to the crime in question, evidence showed that petitioner arrived at the victim's home to convince Ms. Hughes to leave the victim and come home with him. When petitioner arrived at the residence he met with the victim, who was inebriated[2], and a dispute occurred between the men. This altercation resulted in petitioner shooting and killing the victim with a single shell from a shotgun to the chest. At trial, the prosecution presented evidence that showed the victim never owned a shotgun like the murder weapon and that multiple shots were fired from different firearms during the incident, including the 9mm rifle that the victim owned.

When petitioner and Ms. Hughes left the scene, they fled to the home of one Mr. Prichard, who was dating petitioner's sister at the time. Mr. Prichard testified that the two acted nervous in his home, hid multiple guns and a vehicle, changed clothes, and called to have petitioner's sister "get them elsewhere." After the sister picked them up, Mr. Prichard called the sheriff's department, which resulted in petitioner and Ms. Hughes being arrested. Ms. Hughes gave the police a statement hours after the shooting in which she stated that petitioner showed up to the victim's residence and opened fire on the victim and the camper he lived in, hitting him in the chest and killing him. Ms. Hughes stated that she was terrified of petitioner and accompanied him after the shooting out of fear and against her will. At trial, however, Ms. Hughes provided a conflicting account of the events. During her testimony, Ms. Hughes said petitioner was hiding behind a vehicle and fired one "lucky" shot out of self-defense that killed the victim. Conversely, evidence introduced at trial from the crime scene, as well as Mr. Prichard's testimony, supported the State's theory that petitioner was the aggressor, as Ms. Hughes initially reported.

Petitioner testified that the reason he went to the victim's home the day of the killing was because Ms. Hughes told a friend to tell petitioner that Ms. Hughes was being held against her will and needed petitioner to pick her up at the victim's residence. Petitioner testified that he went to the victim's home unarmed to rescue Ms. Hughes. Petitioner testified that he told the victim "I come in peace" when he arrived at the home. Despite this, petitioner alleged that the victim aimed a 9mm rifle at him and fired several shots. Petitioner testified that he took cover behind a vehicle and found a loaded shotgun, which he said belonged to the victim, hidden in the yard. Petitioner stated he then picked up the gun and fired one shot in the direction of the victim as he was retreating from the victim's shots. Petitioner testified that the one shot he fired hit the victim in the chest and killed him. Further, petitioner testified he shot the victim in self-defense and did not have the requisite intent or malice to be guilty of murder. Although both sides presented evidence and testimony to prove who the initial aggressor was, the jury ultimately found petitioner to be the aggressor and rejected his contention that he acted in self-defense.

Also during trial, some of the victim's family members made comments from the courtroom's gallery, which caused the trial court to order the family members to move away from the jury. The comments were directed at petitioner and included expressions of anger about the victim's death. However, petitioner's counsel did not object or request a mistrial regarding the trial court's actions. At the close of all evidence, the jury found petitioner guilty of second-degree murder, though the circuit court granted petitioner's motion to dismiss the charge of abduction. The court denied petitioner's post-trial motions for judgment of acquittal and a new

---

[2]An autopsy revealed the victim's blood alcohol content to be 0.11 at the time of death.

trial and sentenced petitioner to a term of thirty years of incarceration. It is from the order resentencing him that petitioner appeals.

We have previously held as follows:

> "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

Syl. Pt. 1, *State v. Blevins*, 231 W.Va. 135, 744 S.E.2d 245 (2013). On appeal, petitioner argues that the circuit court erred in denying his motion for judgment of acquittal because the State did not establish every statutory element of second-degree murder. In addressing motions for judgment of acquittal, we have stated that "[t]he Court applies a *de novo* standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W.Va. 492, 711 S.E.2d 562 (2011) (citing *State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996)). As to challenges to the sufficiency of the evidence, this Court has further explained that

> "[t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syllabus point 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 3, *State v. Horn*, 232 W.Va. 32, 750 S.E.2d 248 (2013). Specifically, petitioner argues that the evidence established that he did not commit murder because he acted in self-defense. Moreover, petitioner asserts that the State failed to establish malice on his part. The Court, however, does not agree. Importantly, petitioner's argument on this issue misstates the evidence presented below.

According to petitioner, there was no evidence that he was the initial aggressor in the confrontation at issue. This argument totally ignores the fact that the jury rejected testimony from both petitioner and Ms. Hughes on this issue, especially in light of Ms. Hughes's impeachment regarding the statement she gave to police hours after the shooting in which she stated that petitioner arrived at the victim's residence and opened fire on the victim from outside. While it is true that Ms. Hughes provided a conflicting account of the events at trial, the jury clearly made a credibility determination regarding her testimony and did not find her conflicting account at trial credible. The only other testimony regarding petitioner's self-defense theory

came from petitioner, and the jury was also free to discredit his testimony if it found the same inherently incredible.

In discussing witness credibility, we have held that "[c]redibility determinations are properly made by the trier of fact . . . who has had the opportunity to observe, first hand, the demeanor of the witness." *Lister v. Ballard*, 237 W.Va. 34, --, 784 S.E.2d 733, 739 (2016) (quoting *Miller v. Chenoweth*, 229 W.Va. 114, 121, 727 S.E.2d 658, 665 (2012)). Additionally, we have held as follows: "'In the trial of a criminal prosecution, where guilt or innocence depends on conflicting evidence, the weight and credibility of the testimony of any witness is for jury determination.' Syllabus Point 1, *State v. Harlow*, 137 W.Va. 251, 71 S.E.2d 330 (1952)." Syl. Pt. 2, *State v. Smith*, 225 W.Va. 706, 696 S.E.2d 8 (2010). Based upon these holdings, it is clear that the jury was free to give less weight to the testimony of petitioner and the conflicting account of Ms. Hughes, the only witnesses who provided any evidence in support of petitioner's theory of self-defense. This is especially true in light of the additional evidence that supported the jury's verdict of second-degree murder.

The record on appeal shows that the State put on sufficient evidence to establish that petitioner could not have been firing backwards as he ran away, as he alleged, and that he harassed the victim in the days before his death. Additionally, the State established that the murder weapon likely did not belong to the victim, as petitioner argued, because no shells for the weapon were found in the residence, despite the fact that multiple rounds were fired from this weapon during the incident. Further, the State established that petitioner's testimony regarding the lone shot he fired was not credible, as evidence showed that petitioner fired at least one additional shot after the victim was already bleeding to death, as evidenced by the presence of broken glass from a window on the victim's back. Moreover, Mr. Prichard's testimony at trial further called Ms. Hughes's trial testimony into question, as he testified that petitioner came to his home, hid the murder weapon and his truck, acted nervously, and may have taken Ms. Hughes against her will. As such, it is clear that the evidence below established that petitioner did not act in self-defense.

Further, viewing the evidence in the light most favorable to the State, it is clear that the prosecution established malice, as required for a conviction of second-degree murder. Pursuant to West Virginia Code § 61-2-1,

> [m]urder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four, chapter sixty-a of this code, is murder of the first degree. *All other murder is murder of the second degree*.

(emphasis added). In discussing second-degree murder, we have held that "'[m]alice, express or implied, is an essential element of murder in the second degree, and if absent the homicide is of no higher grade than voluntary manslaughter.' Syllabus Point 1, *State v. Galford*, 87 W.Va. 358, 105 S.E. 237 (1920)." Syl. Pt. 2, *State v. Clayton*, 166 W.Va 782, 277 S.E.2d 619 (1981).

Moreover, we have held that "[i]n a homicide trial, malice and intent may be inferred by the jury from the defendant's use of a deadly weapon, under circumstances which the jury does not believe afforded the defendant excuse, justification or provocation for his conduct." Syl. Pt. 1, in part, *State ex rel. Corbin v. Haines*, 218 W.Va. 315, 624 S.E.2d 752 (2005) (quoting Syl. Pt. 5, *State v. Jenkins*, 191 W.Va. 87, 443 S.E.2d 244 (1994)). As outlined above, petitioner admitted to shooting the victim, although he also claimed that he acted in self-defense. The jury, however, did not find petitioner's evidence regarding self-defense credible and, instead, inferred malice from petitioner's use of a deadly weapon. As such, it is clear that the State established all elements of second-degree murder, and the circuit court did not err in denying petitioner's motion for judgment of acquittal on these grounds.

Next, petitioner argues that the circuit court erred in denying his motion for a new trial. According to petitioner, the State made improper remarks before the jury, offered improper evidence, and engaged in misconduct. First, petitioner argues that the State's overuse of speculation and conjecture during its opening statement and closing argument requires a new trial because the remarks clearly prejudiced him and resulted in manifest injustice. Specifically, petitioner argues that the State portrayed the victim as protecting Ms. Hughes and also ignored the fact that the victim's blood alcohol content was well above the legal limit to operate a vehicle and that he had recently been released from prison for committing a violent crime. The record on appeal, however, reveals no error. While petitioner may not have agreed with the State's characterization of the evidence below, the State's remarks in its opening statement and closing argument were all based on the evidence. We have held that "[a] prosecutor may argue all reasonable inferences from the evidence in the record." Syl. Pt. 3, in part, *State v. Messer*, 223 W.Va. 197, 672 S.E.2d 333 (2008) (quoting Syl. Pt. 7, *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988)). Our review shows that the statements of which petitioner complains constitute reasonable inferences based on the evidence and, accordingly, we find no error in the circuit court's denial of petitioner's motion for a new trial on these grounds.

Next, petitioner argues that the State improperly sought to introduce evidence that the circuit court deemed inadmissible. According to petitioner, the State was barred from introducing Ms. Hughes's prior statement to police into evidence, but that it, nonetheless, introduced the evidence during her testimony. The Court, however, finds that petitioner's argument on this issue incorrectly characterizes the nature of the State's examination of Ms. Hughes. Importantly, the circuit court specifically ruled that the State was not allowed to introduce Ms. Hughes's statement into evidence. However, the circuit court correctly ruled that the State could impeach Ms. Hughes by way of her recorded statement.

In discussing impeachment, we have held that "Rule 607 of the West Virginia Rules of Evidence allows a party, including the one who called the witness, to impeach a witness by a prior inconsistent statement." *State v. White*, 231 W.Va. 270, 281, 744 S.E.2d 668, 679 (2013) (quoting Syl. Pt. 3, *State v. Collins*, 186 W.Va. 1, 409 S.E.2d 181 (1990)). Moreover, in regard to prior inconsistent statements, we have held that "[s]uch a statement may not be admitted as substantive evidence: The inconsistent statement only serves to raise doubts regarding the truthfulness of both statements of the witness." *State v. Blake*, 197 W.Va. 700, 706, 478 S.E.2d 550, 556 (1996) (citing *State v. Collins*, 186 W.Va. 1, 6, 409 S.E.2d 181, 186 (1990)). Indeed, in this matter, the witness's prior inconsistent statement was not admitted as substantive evidence.

In fact, it was not admitted into evidence at all. Instead, the State simply used the statement to impeach the witness and raise doubts as to the truthfulness of her testimony. As such, we find no error in the circuit court's denial of petitioner's motion for a new trial on this ground.

Petitioner also argues that the circuit court erred in denying his motion for a new trial upon allegations of juror misconduct. According to petitioner, the jury's verdict was influenced by comments made by the victim's relatives in the courtroom. Petitioner argues that on the last day of trial, two of the victim's relatives seated in the gallery made derogatory remarks towards petitioner that the jury could hear. The record on appeal, however, is devoid of any evidence that any juror heard these remarks, let alone committed misconduct by acting on these remarks. We have previously held that

"[i]n the absence of any evidence that an interested party induced juror misconduct, no jury verdict will be reversed on the ground of juror misconduct unless the defendant proves by clear and convincing evidence that the misconduct has prejudiced the defendant to the extent that the defendant has not received a fair trial." Syllabus point 3, *State v. Sutphin*, 195 W.Va. 551, 466 S.E.2d 402 (1995).

Syl. Pt. 2, *State v. Trail*, 236 W.Va. 167, 778 S.E.2d 616 (2015). As noted above, there is simply no evidence to indicate that any juror misconduct occurred as a result of the relatives' statements, nor is there any evidence of juror misconduct. Accordingly, we find no error in the circuit court's denial of petitioner's motion for a new trial on these grounds.

Finally, petitioner argues that our second-degree murder statute, as codified at West Virginia Code § 61-2-1, is unconstitutionally vague because it fails to define the conduct prohibited and, as such, should be voided. The Court does not agree. Pursuant to West Virginia Code § 61-2-1,

[m]urder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four, chapter sixty-a of this code, is murder of the first degree. All other murder is murder of the second degree.

Further, in addressing the constitutionality of statutes, we have held that "'[a] criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication.' Syl. Pt. 1, *State v. Flinn*, 158 W.Va. 111, 208 S.E.2d 538 (1974)." Syl. Pt. 7, *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011). Here it is clear that West Virginia Code § 61-2-1 is constitutional, as it plainly sets forth the prohibited conduct; that is to say, individuals are prohibited from committing murder. While the statute in question is brief, it is abundantly clear that any murder not described as first-degree murder constitutes second-degree murder. As such, we find petitioner is entitled to no relief in this regard.

For the foregoing reasons, the circuit court's May 14, 2015, order resentencing petitioner is hereby affirmed.

Affirmed.

**ISSUED**: November 21, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis